FISHER v. TRUST CO.

·(Filed April 18, 1905).

*Administration Suits—Power of Attorney—Revoked by Death—Powers Coupled with Interest—Sales of Property —Receivers—Discretion of Court—Receiver's Certificates.*

1. Under section 1151 of the Code, the Superior Court has jurisdiction to entertain suits brought by creditors or by any party interested in the proper administration of an estate, and the court may bring the creditors in as defendants and protect the rights of the parties by the appointment of a receiver and by other appropriate orders.

2. A power of attorney is revoked by the death of the person giving it, except where a power is coupled with an interest in the thing itself—the power must be grafted on the estate; and an interest in the proceeds of the property does not constitute an interest in the thing.

3. Where F. signed a contract giving power to defendant to make sales of his property and it was stipulated that it should be binding upon his heirs, executors, administrators and assigns, but it was not signed by his wife, and it was further provided that the right to make sales was dependent upon F's agreeing to the price and he should execute the deeds, *held*, the contract was revoked by F's death, but for expenditures made and it may be for services rendered defendant is entitled to be repaid and compensated from the proceeds of the property when sold.

4. While the court will not usually appoint as receiver a person interested in the property, or a party to the controversy as attorney or otherwise, yet the selection rests in the sound discretion of the court, and when no suggestion is made affecting the personal fitness of the receiver or that he will not discharge the duties of the position properly, the appointment of the attorney of the plaintiff will not be interfered with.

5. The practice of appointing a receiver upon an unverified complaint and without notice to creditors and other persons interested, is not commended.

6. Where a receiver was appointed to take charge of and manage the estate of testator, pending a settlement of the estate, the court has no right to make an order conferring upon the receiver the power to issue certificates for disbursements made by the administrator c. t. a., or to otherwise incumber the property.

7. An order in an administration suit, authorizing a receiver to issue certificates or otherwise incumber the property does not bind creditors brought in after it was made.

ACTION by Isabella Fisher, administratrix with the will annexed of B. J. Fisher, against the Southern Loan & Trust Company, O. M. Fisher and others, heard by *Judge Henry R. Bryan,* at the September, Term, 1904 of the Superior Court of GUILFORD County. From a judgment for the plaintiff, the defendant Trust Co., appealed.

This action, in the nature of a bill in equity, was originally instituted at February term, 1904, of the Superior Court of GUILFORD by plaintiff as administratrix of B. J. Fisher and certain creditors, against the children and heirs at laws of her intestate. The plaintiffs named in the summons, other than the administratrix, declining to permit the use of their names or to prosecute the action, were by an order made in the cause at the same term, made parties defendant and there was an order that summons issue to them returnable to the next term. Thereafter, it appearing that summons had been duly served on the infant defendants without general guardian, E. J. Justice, Esq., was duly appointed guardian

*ad litem* of said infants. At the February term 1904 the plaintiff administratrix filed her complaint against the infant defendants setting forth that B. J. Fisher died on April 15, 1903, in the city of New York, leaving a last will and testament which was duly admitted to probate before the Surrogate of New York County. That said Fisher devised his entire real and personal estate to his wife, the plaintiff, for life, remainder to his children, the infant defendants. That the executor named in said will renounced his right to qualify and the plaintiff was duly appointed administratix with the will annexed. That thereafter said will was duly admitted to probate before the Clerk of the Superior Court of Guilford and the plaintiff was duly appointed and qualified as administratrix with the will annexed in this State. That said Fisher was at the time of his death the owner of much valuable real estate in and adjacent to the city of Greensboro in said county and State, a full description of which is set out in the complaint. That said real estate was incumbered with large indebtedness secured by mortgages and deeds of trust amounting to about $45,000 much of which was past due including unpaid interest. That the rents accruing from said real estate amount to about $3,000 per annum. That said Fisher left but a small quantity of personal estate, entirely insufficient to pay even the interest on his debts. That the plaintiff and her children, the infant defendants, resided in the city of New York, the ages of said children ranging from eight to eighteen years. That the plaintiff had no means of support other than the estate of said Fisher. That one of the creditors holding a mortgage on a part of said real estate securing an indebtedness of $10,000 demanded payment of his debt and threatened to foreclose his mortgage. That other creditors having deeds of trust demanded payment of interest. That if said mortgages and deeds of trust were foreclosed, property of the value of more than $100,000 would be sacrificed to pay an

indebtedness of less than one half that amount. That by
reason of plaintiff's residence in New York and the atten-
tion demanded by her family, it was impracticable for her
to give proper attention to said real estate. That she was ad-
vised that she could not sell the real estate without the or-
ders of the court. That she had no means with which to
pay the indebtedness of her late husband otherwise than by
a sale of said real estate. That she desired the appointment
of a receiver with power to take charge of and administer
the said real estate and to protect the interests of the plain-
tiffs and defendants as well as the creditors and mortgagees.
That said receiver be empowered to lay off a portion of said
unimproved real estate into lots—to advertise the same for
sale—to sell the buildings and do all such other things neces-
sary and proper in the premises. That A. L. Brooks,
Esq., being attorney for said estate ·and plaintiff's trusted
legal adviser would be a proper person to name as receiver
etc. This complaint is not verified. The guardian *ad litem*
at the same term filed his answer admitting all of the allega-
tions in the complaint and joining the plaintiff in her prayer
that a receiver be appointed. This answer was filed Feb-
ruary 25, 1904, unverified. That at said term an order was
made appointing A. L. Brooks, Esq. commissioner and re-
ceiver of both real and personal estate situate in the county
of Guilford belonging to the estate of said Fisher, to man-
age, control and direct the affairs of same; to survey and lay
off unimproved real estate; to advertise and sell same either
at public or private sale and to sell at public or private sale
the Planters Hotel. "That if for any reason sales of suffi-
cient property can not be made to satisfy the outstanding in-
terest and principal indebtedness which creditors may de-
mand the payment of, then, and in that event, the said re-
ceiver is hereby authorized, empowered and directed to bor-
row such sum or sums of money as may be necessary to sat-
isfy such claims, and to execute and deliver to the lender,

receiver certificates or notes, and to secure the same, if desired by such lender, by executing a mortgage or mortgages upon any and so much of the property belonging to the estate of the said B. J. Fisher as may be necessary for such purpose. That the said commissioner and receiver is hereby authorized and empowered to collect and receive any and all rents, obligations and dues owing and belonging, or hereafter becoming due to the said estate, and to execute receipts therefor; to make report to this court of all sales of land and loans secured by him, either in term or at chambers, and to execute deeds therefor or receiver certificates and notes as the case may require. And the said commissioner and receiver is hereby further directed, within sixty days from this term of court, to advertise for all parties holding claims against the same to make proof thereof for payment; and that the commissioner and receiver herein appointed shall from time to time make report to this court, either at chambers or at the term, of all his dealings and transactions with the said estate; and this cause is retained for further orders and direction."

On the third day of March, 1904, the plaintiff in her own behalf filed a petition in the cause setting forth that she lived with her husband and their children in the city of New York. That at the time of his death her husband owned no personal estate except furniture. That they had lived under the impression that her husband was a wealthy man and their expenses were in keeping with such impression. That her children were attending school in New York and that to maintain them in the social condition in which they lived required considerable income. That one of her children is an invalid. That they had no income whatever. That since the death of her husband she had paid out of her personal estate an indebtedness against her husband secured by mortgage of over $5,000; that she had also paid funeral expenses, attorneys' fees, support of herself and children

amounting in all to $8,250. That she is now in need of
money with which to maintain and support her family and
is compelled to have money from the estate of her husband
for such purpose etc. She prays that the receiver be di-
rected to issue to her a receiver's certificate for $8,250. She
files with her petition a statement showing the purposes for
which said expenditures were made, doctor's bill, funeral
expenses, mourning clothing, attorney's fees, mortgage debt
etc. That thereupon and at the same time the said receiver
filed the following petition: "I beg leave to call the court's
attention to the annexed petition and affidavit of Isabella
Fisher and W. S. Jessup, showing that Mrs. Fisher has ad-
vanced to the estate of the late B. J. Fisher, out of her sepa-
rate personal estate, over Nine Thousand Dollars, of which
she desires to be repaid; and also the urgent necessity for
some money provision for the maintenance and support of
herself and children, and for the education of her children.
The petitioner desires that the court direct him as commis-
sioner and receiver to issue to her a receiver's certificate for
$8,250 upon said claim. If the court shall be of opinion that
such an order should be made, "and that I as receiver
*   *   *   should so execute a certificate for said amount, I
respectfully request that the court will direct me in the
premises, as it may appear to be just" etc. Whereupon on
March 10, 1904, an order was made, reciting the facts set
forth in said petition and directing "That A. L. Brooks, re-
ceiver etc.   *   *   *   be and is hereby directed to issue to
said Isabella Fisher, a receiver's certificate against the prop-
of the estate of the late B. J. Fisher in the sum of $8,250
and deliver the same to her and of his actions   *   *   *
make report to the next term of the Superior Court of Guil-
ford or   *   *   *   at chambers in the meantime, should
such a course be necessary."

On August 19, 1904 plaintiff filed her complaint against
defendant Southern Loan & Trust Company, adopting the

allegations in the original complaint and further alleging that her intestate prior to his death entered into a contract with the said company by which he turned over to it for sale upon the conditions therein set forth, certain real estate described in said contract, and being the same real estate described in her complaint. That by the terms of said contract the company was authorized and it agreed to expend $5,000 on the improvement of said property which was to be repaid from the proceeds of the first sale thereof. The said company further undertook as agent of said Fisher to sell the property at such prices as might be named by said Fisher, the said Fisher agreeing to execute to the purchasers a good and sufficient deed with full warranty etc. For making sales the company was to receive a commission of one third of the proceeds. The said Fisher covenanted with the company for himself, his heirs, executors, administrators and assigns, to carry out and perform his part of said contract. Plaintiff further alleged that the defendant company, relying upon the provisions of said contract, claimed that it had the right and power to sell said property and that such claim on the part of the said company prevented the sale of said property by herself or by the commissioner appointed by the court. She further alleged that the said contract or power of attorney terminated upon the death of the said Fisher. She prayed that the said contract should be declared null and void and delivered for cancellation. At September term, 1904, defendant company filed its answer, admitting a portion of said complaint, alleging that it had no sufficient knowledge or information to form a belief as to other allegations admitting the execution of the contract, and alleging that the death of the said Fisher did not operate to revoke the powers conferred therein and alleging that it had expended large sums of money, a great amount of time and labor in preparing the said land for sale under said contract, and in otherwise proceeding under said contract, and

had a vested right to perform its powers thereunder and further alleging that it had sold a portion of said lands and would have sold more but for an agreement with the said Fisher that it was best to postpone the sale of the lots until the city had proceeded further with the proposed lines of sewer etc. Defendant denied necessity for appointment of receiver and alleged that the estate should be settled in accordance with the statutes in force in this State providing for settlement of estates of deceased persons. The defendant demanded that the order theretofore made appointing a receiver be revoked and that the receiver be discharged, for such other and further relief etc.

The cause coming on for trial at September term, 1904, upon the pleadings and exhibits the defendant company moved the court to discharge the receiver and dismiss the action. Motion denied, whereupon the court rendered judgment that the contract set out in the pleadings was inoperative and of no effect by reason of the death of the said Fisher, directed cancellation of the same, to which defendant excepted. The court thereupon made an order that the receiver proceed to sell the land etc, report the same to the court, to all of which the defendant duly excepted and appealed. The defendant assigns as error, (1st) the refusal of the court to hear evidence or submit issues to the jury; (2nd) refusal to sign judgment discharging the receiver and dismissing the action and (3rd) that no provision was made in the order declaring the contract void for reimbursing the defendant company for moneys expended etc.

*Brooks & Thompson, King & Kimball* and *E. J. Justice* for the plaintiff.

*Pou & Fuller, W. P. Bynum, Jr.* and *Scales, Taylor & Scales,* for the defendant.

CONNOR, J. After stating the facts: The proceedings

had in this action have been somewhat eccentric and irregular. It was originally brought by the administratrix and mortgage creditors against the children of the deceased, who had under his will only a remainder after the life estate of their mother, who appears only in her representative capacity. The creditors, refusing to proceed with the cause, are made parties defendant and summons issued returnable to the September term of court. The plaintiff as administratrix proceeds to file her complaint against the children who by their guardian *ad litem* at the same term file an answer admitting every allegation of the complaint. A receiver is at the same term, and without notice to the creditors or the trustee, appointed with very extensive and unusual powers. The jurisdiction of courts of equity to entertain administration suits, at the instance of creditors, devisees or legatees has been uniformly recognized and frequently exercised. Such suits are less frequent since the distinction between legal and equitable assets has been abolished and full powers in the settlement of estates conferred upon courts of probate. Whatever doubt may have existed in respect to the jurisdiction after the establishment of our present judicial system, was removed by the act of 1876 chapter 241, Code, Sec. 1511; *Haywood v. Haywood,* 79 N. C., 42; *Pegram v. Armstrong,* 82 N. C., 327. It is true that the language of the statute would seem to contemplate actions by creditors, but we think the purpose was to give to the court, if it did not have it, jurisdiction to entertain suits brought by any party interested in the proper administration of an estate. When the infant defendants by their answer admitted the facts upon which the jurisdiction attached, and joined in asking the same relief, we can see no reason why the court should not retain the cause bringing the creditors in as defendants and proceed to protect the rights of the parties by appropriate orders etc. The facts set out, in our opinion, entitle the parties to have the aid of

the court in protecting the property by the appointment of
a receiver, and the adjustment of conflicting claims to the
end that it might be brought to sale, with an unincumbered
title to purchasers under such circumstances and conditions
as would pay the debts and leave the largest possible surplus
for. the devisees.    When the plaintiff filed her complaint
against the defendant Loan & Trust Company, it developed
the fact that prior to his death Fisher had entered into a
contract with the company in regard to a portion of his real
estate by which the said company was empowered to make
sale thereof in the manner and upon the terms set out.    It is
manifest that until the rights and powers of the defendant
company in respect to this property are adjudged and set-
tled, it will be impossible to make sale or deal with it.    The
court therefore upon the admissions in the pleadings and in-
spection of the contract, properly proceeded to dispose of this
very important question.    We concur with his honor in re-
spect to the effect which the death of Fisher had upon this
contract.    There was no question or issue of fact in this re-
gard for the jury.    It has been universally recognized as
sound law in this country since the decision of *Hunt v. Rous-
mainer,* 21 U. S., 174, that a power of attorney is revoked
by the death of the person giving it.    To this rule there is
one exception: that if a power be coupled with an interest,
it survives the person giving it and may be executed after
his death.    That the interest which can protect a power after
the death of a person who creates it must be an interest in
the thing itself—the power must be grafted on the estate.
The doctrine, with the reason therefore, is thus stated by
*Marshall, C. J.*  "The interest or title in the thing being
vested in the person who gives the power, remains in him,
unless it be conveyed with the power and can pass out of
him only by a regular act in his own name.    The act of the
substitute therefore, which in such a case is the act of the
principal, to be legally effectual, must be in his name, must

be such an act as the principal himself would be capable of performing and which would be valid if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest or estate passes with the power and vests in the person by whom the power is to be executed, such person acts in his own name. The estate being in him passes from him by a conveyance in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his estate. The legal reason which limits a power to the life of the person giving it exists no longer and the rule ceases with the reason on which it is founded." *Carter v. Slocumb,* 122 N. C., 475; 22 Am. & Eng. Enc. (2nd Ed.) 1132. The fact that the power may have been irrevocable during the life of the person giving it does not affect the principle. It is equally well settled that an interest in the proceeds of the property does not constitute an interest in the thing—the subject matter of the power. *F. L. & T. Co. v. Wilson,* 138 N. Y., 287. The defendant company conceding the law to be as stated says that the contract under which it claims the right to proceed with the sale of this property is distinguished from the cases cited for that performance is made binding on Fisher's heirs, executors, administrators, assigns and upon the company's successors; that thereby the parties contracted that the rights and duties should continue and be operative after the death or dissolution of either contracting party. It must be conceded that parties may enter into contracts, the performance of which may be enforced by or against their representatives after the death of the contracting party. We do not think this contract falls within that class. An insurmountable difficulty confronting the defendant company in making sales under it, is that the wife of Fisher, although named a party, did not execute the contract—it would be ruinous to all parties interested in the estate to permit sales

of the property subject to the dower rights of the widow. Again, the right and power to make sales is dependent upon Fisher's agreeing to the price. It requires no argument to show that this power cannot be exercised by his personal representative; his heirs at law and devisees, except his widow, are infants and therefore incapable of acting. Again, there is no power conferred on the defendant company to execute deeds for the property when sold. Fisher agrees that he will execute deeds to purchasers for land whenever the company makes a sale. This certainly is nothing more than a contract of his part to convey when sales are made at prices agreed upon by him. The only possible right accruing to the company would be to compel specific performance by the heirs or devisees of Fisher. This they could not do, because the condition upon which the right accrues can never exist, nor could the purchaser be required to accept title subject to the dower right of the widow. While we, for the reasons given, concur with His Honor, are of the opinion that he should not have directed the concellation of the contract. The defendant company avers that it had prior to Fisher's death, pursuant to the terms and provisions of the contract, expended large sums of money in opening up and improving the real estate, preparing it for sale etc. It also alleges that it had a vested interest in the contract. In so far as the right conferred is a power to the defendant company to sell, it is avoided and annulled by way of revocation by Fisher's death, but for expenditures made and it may be for services rendered, it is entitled to be repaid and compensated from the proceeds of the property when sold. The plaintiff and defendant devisees show no equity for cancellation, but for a decree removing any cloud from the title to the property and declaring the effect of Fisher's death upon the right to make sales. In all other respects the rights of the parties are unaffected by Fisher's death. The judgment in this respect, thus modified, is affirmed.

The defendants insist that Mr. Brooks should not have been appointed receiver and commissioner because of his relation to the parties. It is undoubtedly true and abundantly sustained by authority that the court will not usually appoint as receiver, persons interested in the property, or the parties to the controversy as attorney or otherwise. The selection of the person to be appointed necessarily rests in the sound judicial discretion of the court. The chancellor, under the equity practice, usually referred the question of selection to the master and unless good cause was shown appointed the person nominated by him. While objection to the person appointed on the ground of relationship to the parties or interest in the property, is proper to be considered upon appeal, the appellate court will not, save for strong reasons, interfere with the appointment made by the court. No suggestion is made affecting the personal fitness of the receiver, or that he will not discharge the duties of the position properly. Mr. High says, "It is not regarded as an abuse of judicial discretion to appoint as receiver the attorneys of the respective parties to the cause and the court, in making such appointment, will not be interfered with upon appeal." High on Receivers, 69. If in the progress of the cause any conditions arise which will render it embarrassing either to the receiver or the parties for him to continue, we are quite sure that the court will either associate some one with him or appoint another in his stead. So far as we can see at this time there is no conflict of interest in regard to management or sale of the property. The welfare of all is promoted by procuring the best possible results. We note the fact that very extensive and, we think unusual powers, are conferred upon the receiver by the order made at February term, 1904. We do not commend the practice of appointing a receiver upon the unverified complaint and without notice to creditors and other persons interested. We note also that at the same term an order was made authoriz-

ing the receiver to issue a certificate to the plaintiff administratrix for a large account. We very much doubt whether it is within the power of the court in a proceeding like this to authorize the issuance of receiver's certificates. This practice which has grown up of late years is very largely confined to the Federal Courts in suits for the foreclosure of mortgages and trust deeds executed by railway companies and other corporations, whose property is affected by a public duty. We are not prepared to say that these certificates may not be authorized in similar suits dealing with other corporations such as cotton or other mills, machine shops etc, in all of which it is of vital interest to creditors and owners that their operations be continued until they can be brought to sale. If such power exists it should not be exercised until notice has been given to creditors. High on Receivers, 312. However this may be we are clearly of the opinion that the reasons upon which the power is claimed and exercised do not apply to a case like this or to claims like those for which the certificate for $8,250 was issued. *Judge Gresham,* in *Loan and Trust Co. v. Grape Creek Coal Co.,* 55 Fed. Rep. 481, discusses the subject and clearly limits the power to issue such certificates to suits for the foreclosure of railway mortgages and to operating expenses. *Kneeland v. Trust Co.,* 136 U. S. 89. The liens, encumbrances and order of payment of the indebtedness of a deceased person are fixed either by contract or by statute and we can find no power in the court to change or disturb such order. In saying this we do not question the power of the court to make necessary orders for the protection of the property, payment of taxes, insurance, surveying and such like expenses. These are essential to the purpose and end for which the court lends its aid. The order of February term, so far as it confers upon the receiver the power to issue such certificates or otherwise incumber the property, should be modified. Having been made prior to the time the creditors were brought in

they are not bound by it. They are bound by the orders made at the December term, 1904. It is evident that the condition of the family of Mr. Fisher demands a prompt settlement of all controverted matters and sale of the property so that they may have an income for their necessary support. A decree will be drawn declaring that by the death of B. J. Fisher the power to make sale or otherwise interfere with the property described in the contract of October 11, 1900, is revoked. That defendant, Southern Loan & Trust Co., file with the receiver an itemized statement of all amounts expended by it under and pursuant to the provisions of said contract. The defendant company or any other creditor may upon notice move the court to modify the order of February term, 1904, by striking from it all provisions conferring upon the reveiver the power to issue certificates or otherwise incumber the property. Mrs. Fisher, in her individual right, should be made a party plaintiff so that her interest may pass under a sale of the property. In all other respects the judgment appealed from is affirmed. Neither party will recover costs in this court.

Modified and Affirmed.