Civil action for determination of liability of defendant, guardian, to her wards, for correction and proper statement of her accounts, and for judgment against her, and enforced for any amount that may be found due so as to exonerate plaintiff from any liability as surety upon her bond as guardian, heard upon demurrer to complaint.
The complaint of plaintiff in substantial pertinent part alleges:
"2-3. That on 10 February, 1937, defendant, Mrs. Beulah Lawing, was appointed by the clerk of Superior Court of Lincoln County, North Carolina, guardian of her four minor children, the defendants Karl Lander Lawing, Agnes Lander Lawing, John Means Lawing and Dan Philmon Lawing, who are sixteen, fourteen, thirteen, and nine years of age, respectively, and as such guardian gave a bond in the penal sum of Twenty Five Thousand Dollars, on which, upon her application and an agreement on her part to indemnify and save it harmless from all loss and expense, plaintiff became surety.
"4. That there came into the hands of said guardian the property of such wards consisting principally of their interest in the estate of their deceased father, K. L. Lawing, who died intestate on or about 17 August, 1934, leaving surviving him the said Mrs. Beulah Lawing, as his widow, and his children, the four minor defendants, and of whose estate the widow qualified as administratrix and filed her final account as such administratrix on or about 14 August, 1939; that her accounts, including said final account, as filed in office of clerk of Superior Court of Lincoln County, are referred to and made a part of complaint.
"5. That the estate of said K. L. Lawing, deceased, consisted of personal property and a considerable amount of real estate located in Lincoln County, North Carolina, and considerable in the State of Florida; that as plaintiff is informed and believes the said real estate in the State of North Carolina descended to the children of said K. L. Lawing subject *Page 10 
to the dower interest of his said widow, Mrs. Beulah Lawing, and as to the real estate in Florida, the widow had an option to claim dower, and that, in the absence of such claim, she inherited a child's part, to wit, one-fifth undivided interest therein, and that plaintiff is informed and believes that said widow failed to claim dower and, consequently, owned one-fifth interest in said Florida real estate.
"6. That defendant guardian failed to file an inventory and annual accounts as such guardian until September, 1941, when she filed a purported account, copy of which is attached as an exhibit.
"7. That on or about 3 September, 1941, defendant guardian filed a petition, in an ex parte proceeding before clerk of Superior Court of Lincoln County for authority to borrow money and to mortgage certain real estate belonging to her wards, in which proceeding said minors had no representation except through the petitioner, their guardian — the petition and judgment rendered thereon are referred to and made a part of the complaint.
"8. That plaintiff is informed and believes that defendant guardian has failed to properly account for the funds and property which have come into her hands, as such guardian, and that her account, copy of which is attached as Exhibit A, is incorrect and improper in the following particulars:
"(a) That the said Mrs. Beulah Lawing also had herself appointed guardian of said minor children in the State of Florida, and has filed a purported account in that estate, copy of which is hereto attached marked Exhibit B. The plaintiff is informed and believes that at least one disbursement, amounting to $308.05, has been charged against the minors, both in the North Carolina account and in the Florida account; that numerous charges pertaining to the Florida property and representing disbursements in Florida have been improperly charged in the North Carolina account when they should have been charged in the Florida account, and in many instances it is impossible to ascertain from the two accounts whether or not such charges have been duplicated.
"(b) That said account does not take into consideration all of the funds which should have been received by the said guardian from herself as administratrix of the estate of K. L. Lawing, and in particular in that the said Mrs. Beulah Lawing, in her final account as administratrix, charges the cost of repairs to the home in Florida owned and occupied by the said Mrs. Beulah Lawing and her children jointly against said children and charges no part thereof against herself, and that this affects the final amount of which she acknowledges receipt as guardian.
"(c) In said account of said guardian the guardian charges her wards with numerous items of expense for repairs to properties jointly owned by the guardian and her wards, both in Florida and in North Carolina, *Page 11 
charging no part of said expenses to herself individually, while at the same time she gives herself credit for one-third of the rents of all the North Carolina property, except one building erected by her from guardianship funds.
"(d) That said guardian's account shows numerous items of insurance paid upon properties jointly owned by the guardian and her wards, all of which items are charged to the wards and no part of which is charged to the guardian individually.
"(e) That said account of the guardian charges large amounts to the wards for board furnished by the said guardian who is the mother of said wards, and the plaintiff alleges that said Mrs. Beulah Lawing has funds of her own from which said wards can be supported, and the question should be determined whether she has an obligation to furnish reasonable support to her said children, and if it should be held that she is entitled to charge the said wards for board, the plaintiff is informed and believes that there should be a determination of a proper charge in this action in which said wards are made parties, and that only so much as is found to be proper be charged against them.
"(f) That said report of the guardian treats the funds of all four wards as being jointly owned and contains no separate account as to each one, whereas it appears from the said report that some disbursements therein were made for the benefit of one or more, but less than all, of said wards, and that the said account does not constitute a proper accounting as to the balances due each of said wards individually.
"(g) That the plaintiff is informed and believes that numerous items in said account which have been charged to the wards should have been paid by the guardian individually and should not be charged against said wards. That there should be a determination of the propriety of charging to the wards such items as furniture, drug bills, magazines and newspapers, and other items, as to which the account does not clearly show whether they were bought for the benefit of the children or for the benefit of Mrs. Lawing, or for both.
"(h) That the said guardian's account shows that the guardian has used funds derived from the North Carolina properties of the wards, and belonging to the wards, to pay a loss in the operation of orange groves in Florida, owned jointly by the guardian and her wards, and that no part of said loss is charged to the guardian individually."
"9. That, for the protection of the said wards and the plaintiff as surety, there should be a re-statement of the account; the guardian should be required to account in this action for all funds which she received, or should have received, as such guardian up to the present time and her accounts should be corrected and judgment rendered against her in favor of the wards for any amount found to be due from said guardian to the wards. *Page 12 
"10. The plaintiff is further informed and believes that the validity and binding effect upon the wards of the judgment in the ex parte
proceeding hereinbefore referred to in reference to mortgaging the property of the wards for money used to erect a building thereon should be determined in this action, and if there is any liability of the guardian upon her bond in respect thereto, or in respect to the erection of said building, or use of the funds of the wards in regard thereto, the same should be determined in this action and the guardian required to account and make good any loss sustained by the wards, thereby to the end that this plaintiff be exonerated from liability therefor upon its bond.
"11. That, in view of the fact that this action involves an accounting as between the guardian and her wards, and that her personal interests conflict with her duties as guardian in respect to numerous matters hereinbefore alleged, it is necessary that a guardian ad litem be appointed for the minor defendants to represent them in this action.
"12. That if the minor defendants have any causes of action against said guardian and this plaintiff as surety in reference to said guardianship up to the time of filing this action, whether indicated by the foregoing allegations or not, said defendants, through their guardian ad litem should be required to set the same up in this action, to the end that all liability upon said bond be determined and adjudicated in this action."
Defendant, Mrs. Beulah Lawing, individually and as guardian, demurs to the complaint upon these grounds:
"1. That this court has no jurisdiction of the subject of this action: (a) For that it appears from the complaint that this plaintiff is seeking in this suit to have an accounting of the estates belonging to said wards, and to surcharge and falsify the guardian's annual inventory and report, whereas an appropriate plaintiff, with power to bring such an action, could only maintain such an action in the probate court, presided over by the clerk of the Superior Court of Lincoln County, whose jurisdiction is exclusive.
"(b) For that it appears from the complaint that the accounting sought involves the transactions of Mrs. Beulah Lawing, as guardian for said wards, in the State of Florida, under her appointment as guardian by the Probate Court of said State, to which Court alone she is bound to report; which court has the full and exclusive jurisdiction over her accounts and reports, made with respect to the transactions relating to the properties belonging to the wards in said State.
"2. That the plaintiff above named has not legal capacity to bring and maintain this action, as appears from the complaint, it having failed to show that it has any right, title, or interest in the several estates of the wards, or that it is entitled to any equitable relief incident to said property. *Page 13 
"3. That the complaint does not state facts sufficient to constitute a cause of action against this defendant, either in her individual right or her representative capacity."
Upon hearing in Superior Court, judgment was entered at January Term, 1943, sustaining the demurrer and dismissing the action. Plaintiff excepted thereto, and appeals to Supreme Court, and assigns error.
Admitting the allegations of the complaint to be true, as we must do in considering the sufficiency thereof when challenged by demurrer, appellants present this question: "Where a guardian uses guardianship funds to improve and keep up property in which she is individually interested along with the wards, contributing nothing from her own funds, but taking her share of the rents, and violates her obligations as guardian in other respects, can the surety on the guardian's bond maintain an action in the Superior Court at term time prior to termination of the guardianship to enforce the liability of the guardian in exoneration of the surety, and to surcharge and correct the guardian's accounts either at common law or under C. S., 135?" We are of opinion, and hold, that the surety may maintain such an action and that the provisions of C. S., 135, are in themselves sufficiently broad to give Superior Court original concurrent jurisdiction of the action.
1. As a general rule the surety on a guardian's bond is a creditor of his principal from the date of its execution, although no default occurs until long afterward. 25 Am. Jur., 127, Guardian and Ward, section 203. In the case of Ames v. Darrah, 76 Miss. 187, 23 So. 768, 71 Am. St. Rep., 522, the Supreme Court of Mississippi held that a surety can maintain a bill in equity to set aside a voluntary conveyance made by the guardian to his wife after the date of the bond but before occurrence of a default. Also compare Stenhouse v. Davis, 82 N.C. 432. But if the rule were otherwise, the defense that plaintiff is not a real party in interest is new matter, and may only be made by affirmative allegations. Morrow v.Cline, 211 N.C. 254, 190 S.E. 207; Nall v. McConnell, 211 N.C. 258,190 S.E. 210; Leach v. Page, 211 N.C. 622, 191 S.E. 349.
Moreover, when a guardian fails to "faithfully execute the trust reposed in him as such," upon which his bond is conditioned, C. S., 2162, the surety thereon is subjected to liability, and as a party in interest is entitled to have the wrong remedied.
2. While the surety might have proceeded before the clerk, the statute, C. S., 135, provides that "in addition to the remedy by special proceedings, *Page 14 
actions against executors, administrators, collectors and guardians may be brought originally to the Superior Court at term time; and that it shall be competent for the court in which said actions are pending to order an account to be taken by such persons as said court may designate, and to adjudge the application or distribution of the fund ascertained, or to grant other relief, as the nature of the case may require."
Construing this statute, which originated as section 6, chapter 241, Act of 1876-77, there are numerous decisions relating to administration of estates in which it is held that the Superior Court is therein given concurrent jurisdiction with the probate courts, that is, clerks of Superior Court in actions of class mentioned in the statute. See Haywood v.Haywood, 79 N.C. 42; Bratton v. Davidson, 79 N.C. 423; Simpson v. v.Jones, 82 N.C. 323; Pegram v. Armstrong, 82 N.C. 326; Stenhouse v.Davis, 82 N.C. 432; Rountree v. Britt, 94 N.C. 104; Godwin v. Watford,107 N.C. 168, 11 S.E. 1051; Royster v. Wright, 118 N.C. 152,24 S.E. 746; Fisher v. Trust Co., 138 N.C. 90, 50 S.E. 592; Shober v.Wheeler, 144 N.C. 403, 57 S.E. 152; Oldham v. Rieger, 145 N.C. 254,58 S.E. 1091; Clark v. Homes, 189 N.C. 703, 128 S.E. 20; S. v.McCanless, 193 N.C. 200, 136 S.E. 371; Thigpen v. Trust Co., 203 N.C. 291,165 S.E. 720; In re Hege, 205 N.C. 625, 172 S.E. 345; Rigsbee v.Brogden, 209 N.C. 510, 184 S.E. 24; Leach v. Page, 211 N.C. 622,191 S.E. 349; Gurganus v. McLawhorn, 212 N.C. 397, 193 S.E. 844. And this statute as it was originally enacted, and now is, applies to guardians as well as to executors and administrators.
That the statute is not confined to actions pertaining to final settlement in the administration of estates of deceased persons is shown in the case of Haywood v. Haywood, supra; Leach v. Page, supra; Gurganus v.McLawhorn, supra. And no sufficient reason appears for contrary holding in the present case which relates to a guardianship. In this connection defendants point to the case of Moses v. Moses, 204 N.C. 657,169 S.E. 273. This case is distinguishable from that in hand. While there the question as to the applicableness of C. S., 135, was debated in briefs filed, apparently the Court was of opinion that the primary purpose of the action was the removal of the guardian, and that the matters of accounting were predicated upon such removal, and decided the case without any reference to the provisions of C. S., 135.
The judgment below is
Reversed. *Page 15