MILTON JULIAN AND WIFE, VIRGINIA E. JULIAN, v. EDGAR H. LAWTON AND CHARLES W. COKER, EXECUTORS AND TRUSTEES OF THE ESTATE OF W. C. COKER, DECEASED, LOUISE V. COKER, CORNELIUS O. CATHEY, BEULAH PROCTOR CATHEY, AND WALTER D. TOY.

(Filed 4 June, 1954.)

**1. Deeds § 16b—**

Covenants restricting the free use of property are not favored, and the terms of such covenants will not be enlarged by construction beyond the plain and unmistakable meaning of the language employed.

**2. Same—**

A covenant providing that no residence should be erected on the lot conveyed until the type and exterior lines of the structure had been approved by the developer, or an architect selected by him, creates a covenant personal to the developer which he may exercise in person or through the architect he selects, and therefore such covenant terminates upon the death of the developer and cannot be enforced by the executors and trustees of the developer, nor the owners of other lots in the development on the theory that it was a covenant intended for their benefit.

**3. Principal and Agent § 4—**

> Where the developer of a subdivision inserts in the deed to each lot that
> no residence should be erected thereon unless the exterior lines were ap-
> proved by the developer or by an architect selected by him, and thereafter
> the developer executes an instrument designating the architect to pass on
> the question, *held,* such architect is merely the agent of the developer for
> the purpose stipulated, and such agency is terminated by the death of the
> developer.

APPEAL by defendants from *Sharp, Special Judge,* at February Special
Term, 1954, of ORANGE.

Proceeding under the Uniform Declaratory Judgment Act for a decla-
ration in respect to the construction and validity of a covenant in a deed.

The matters necessary to an understanding of the legal question arising
on the appeal are stated in the numbered paragraphs set forth below.

1. Dr. W. C. Coker, famed and long-time professor of botany at the
University of North Carolina, owned a tract of land near Chapel Hill,
which he subdivided into numerous building lots for residential purposes
and placed upon the market as a restricted residential district under the
name of "the Rocky Ridge Development."

2. On 12 May, 1946, Dr. Coker sold and conveyed one of the lots,
namely, Lot 57, to Cornelius O. Cathey and Beulah Proctor Cathey by a
deed containing this covenant: "And the said Cornelius O. Cathey and
wife, Beulah Proctor Cathey, parties of the second part, as a part of the
consideration of this deed, covenant for themselves, their heirs and as-
signs, with the said W. C. Coker and wife, Louise Venable Coker, parties
of the first part, and their heirs and assigns, as to the land herein de-
scribed, that not more than one dwelling house shall be placed upon this
tract, with the provision that the dwelling house shall cost not less than
$6,000.00; and *that no dwelling house or other building shall be erected
on the tract until the type and exterior lines of the building to be erected
shall have been approved by W. C. Coker or by an architect selected by
him;* that no building upon the said property shall be erected nearer the
Chapel Hill-Nelson Road than 60 feet and that no building shall be
erected nearer the side and rear lines of the lot than 25 feet except with
the written consent of the then owner of the adjoining property affected
thereby; and that no cows or pigs shall be kept upon the premises, pro-
vided, however, that the restrictions herein as to the dwelling house shall
not prohibit the erection and use of servant's quarters on the premises
when erected and used in connection with the garage erected on the prop-
erty."

3. Dr. Coker sold and conveyed many other lots of the Rocky Ridge
Development to others. As a consequence, he retained only a few of the
lots at the time of his death. All of Dr. Coker's grantees took title to

their lots under deeds containing covenants identical with the covenant quoted in the preceding paragraph. The plaintiffs Milton Julian and wife, Virginia E. Julian, had full notice of the existence and terms of such covenants when they accepted the deed mentioned in the next paragraph.

4. On 28 October, 1949, Cornelius O. Cathey and Beulah Proctor Cathey sold and conveyed Lot 57 of the Rocky Ridge Development to the plaintiffs by a deed containing this stipulation: "This deed was executed, delivered, and accepted subject to the restrictions and conditions contained in a prior deed for this same land from W. C. Coker and wife, Louise V. Coker, to Cornelius O. Cathey and wife, Beulah Proctor Cathey, dated March 12, 1946." Cornelius O. Cathey and Beulah Proctor Cathey owned other property in the subdivision, which they still retain.

5. On 17 March, 1953, Dr. Coker executed a subsequently recorded instrument whereby he designated "Walter D. Toy . . . as the architect selected by him to pass upon and approve or disapprove . . . plans and specifications and plot plans" for dwelling houses and other buildings to be erected upon lots in the Rocky Ridge Development.

6. On 27 June, 1953, Dr. Coker died testate, and title to the unsold lots in the Rocky Ridge Development passed to Edgar H. Lawton and Charles W. Coker, the executors and trustees named in his will, subject to the marital rights of his widow, Louise V. Coker. The executors and trustees and the widow still retain their respective interests in the unsold lots.

7. The plaintiffs propose to erect on Lot 57 of the Rocky Ridge Development a dwelling house conforming to all the specific restrictions spelled out in tangible form in the covenant in the deed whereby Dr. Coker conveyed the lot to their grantors Cornelius O. Cathey and Beulah Proctor Cathey.

8. The plaintiffs submitted plans for their proposed dwelling house to Walter D. Toy, who declined to approve the type and exterior lines of the contemplated structure.

9. Subsequent to this event, the still existing controversy arose between the parties in respect to the meaning and validity of the covenant whereby the plaintiffs' grantors Cornelius O. Cathey and Beulah Proctor Cathey agreed that no dwelling house or other building should be erected on Lot 57 until the type and exterior lines of the structure had been "approved by W. C. Coker or by an architect selected by him." The controversy may be summarized in this fashion: The plaintiffs assert that the covenant in question was a personal one inserted in the deed for the benefit of Dr. Coker alone; that the covenant in question ended, therefore, with the death of Dr. Coker; and that consequently the plaintiffs possess an absolute legal right to erect their proposed dwelling on Lot 57 regard-

less of whether Walter D. Toy approves it as to type and exterior lines. The defendants insist, however, that the covenant in question survived Dr. Coker, and that it precludes the plaintiffs from erecting any dwelling house or other building on Lot 57 until the type and exterior lines of the structure have been approved by Walter D. Toy as the architect selected by Dr. Coker. The defendants advance two arguments to sustain their position. They assert primarily that the covenant in question was made for the benefit of the successors in interest to Dr. Coker as well as for the benefit of Dr. Coker himself; that the covenant in question imposed an express contractual obligation upon the plaintiffs' grantors to obtain the prior approval of Dr. Coker or of an architect selected by him; that the plaintiffs are equitably bound to observe the contractual obligation of their grantors because they took title to Lot 57 with notice of the covenant in question; and that the executors and trustees and the widow, as the successors in interest to Dr. Coker, are entitled to compel the plaintiffs to obey their equitable duty to observe the contractual obligation of their grantors. The defendants maintain secondarily that the covenant in question was inserted in the deed to the plaintiffs' grantors pursuant to a general building scheme for the development of the Rocky Ridge Development, and that the covenant in question is, therefore, enforceable against the plaintiffs by the defendants or any other persons owning lots in the Rocky Ridge Development.

10. On 30 September, 1953, the plaintiffs brought this proceeding against the defendants under the Uniform Declaratory Judgment Act for a declaration that the covenant in question ended with the death of Dr. Coker, and that they are, therefore, at liberty to erect a dwelling house on Lot 57 without obtaining the approval of Walter D. Toy or any other architect as to the type and exterior lines of the structure. The defendants entered general appearances, demanding a contrary declaration and accordant injunctive relief.

11. The pleadings on both sides reveal the truth of the factual matters stated above. When the cause was heard at the February Special Term, 1954, of the Superior Court of Orange County, the presiding judge allowed the motion of the plaintiffs for judgment on the pleadings, and entered a judgment declaring that the plaintiffs are entitled to erect a dwelling house on Lot 57 "without obtaining the approval of Walter D. Toy or any other architect as to the type and exterior lines of the building." The defendants excepted and appealed, assigning this declaration as error.

*William S. Stewart and Emery B. Denny, Jr., for plaintiffs.*
*John T. Manning for defendants.*

ERVIN, J. We take it for granted without so deciding for the purpose of this particular case that the covenant in question was valid in law at the time of its insertion in the deed to the plaintiffs' grantors. Since we indulge this assumption, our decision must turn on the construction of the relevant documents.

The law looks with disfavor upon covenants restricting the free use of property. As a consequence, the law declares that nothing can be read into a restrictive covenant enlarging its meaning beyond what its language plainly and unmistakably imports. *Starmount Co. v. Memorial Park,* 233 N.C. 613, 65 S.E. 2d 134, 25 A.L.R. 2d 898.

When the plaintiffs' grantors agreed that no dwelling house or other building should be erected on Lot 57 until the type and exterior lines of the structure had been "approved by W. C. Coker or by an architect selected by him," they made this twofold covenant in plain and unmistakable language: First, that Dr. Coker should possess the absolute power to determine the type and exterior lines of any building to be erected on Lot 57 unfettered by any external or revealed standards or limitations whatsoever; and, second, that Dr. Coker could exercise this absolute power in person or through "an architect selected by him."

It is manifest that this covenant and the similar covenants in the deeds to Dr. Coker's other grantees were designed to make effectual a desire on the part of Dr. Coker that the external appearances of buildings on lots in the Rocky Ridge Development should harmonize with his aesthetic sense. This being true, the covenant in question was personal to Dr. Coker, and ended when death put out his candle. *Jennings v. Baroff,* 104 N. J. Eq. 132, 144 A. 717, 60 A.L.R. 1219; *Harrington v. Joyce,* 316 Mass. 187, 55 N.E. 2d 30; *Melfi v. Doscher,* 164 S.C. 111, 161 S.E. 859; *Allison v. Greear,* 188 Va. 64, 49 S.E. 2d 279; 14 Am. Jur., Covenants, section 205; 21 C.J.S., Covenants, section 33.

The notion that the covenant in question was intended to benefit the successors in interest to Dr. Coker or the purchasers of lots in the subdivision ignores the crucial circumstance that it is, in essence, without existence or meaning apart from the brain of Dr. Coker or that of "an architect selected by him."

The ruling of the presiding judge is sound for another reason. "An agent is one who acts for or in the place of another by authority from him." 2 C.J.S., Agency, section 1. When he designated Toy as the "architect selected by him" within the purview of the covenant in question, Dr. Coker made Toy his agent, and nothing more. Toy's authority ended at Dr. Coker's death under the rule that the death of the principal terminates the authority of the agent. *Parker v. Trust Co.,* 229 N.C. 527, 50 S.E. 2d 304; *Fisher v. Trust Co.,* 138 N.C. 90, 50 S.E. 592; *Wainwright v. Massenburg,* 129 N.C. 46, 39 S.E. 725; *Duckworth v. Orr,* 126

N.C. 674, 36 S.E. 150; Williston on Contracts (Rev. Ed.), section 279; Restatement of the Law of Agency, section 120; 2 C.J.S., Agency, section 86.

For the reasons given, the judgment is

Affirmed.