GUS Z. LANCASTER'S STOCK YARDS, INC. v. MRS. MURLEEN WILLIAMS, BRYAN HARGETT, TRENTON LIVESTOCK, INC., GREENVILLE LIVESTOCK, INC., AND DON C. FLOWERS, INC.

No. 777SC772

(Filed 29 August 1978)

**Sales § 10.1— purchase of pigs by dishonored draft—resale of pigs by agents of purchaser—seller's right to recover from agents**

Where the trial court found upon supporting evidence that original defendant paid for pigs purchased from plaintiff with a draft which was returned for insufficient funds, that additional defendants knew that original defendant had not paid plaintiff for the pigs and would not be able to do so and that plaintiff was seeking recovery of the purchase price or the pigs, and that the additional defendants were not purchasers of the pigs but acted as agent for the original defendant when they thereafter sold the pigs to third parties and applied the proceeds of the sale to debts owed by the original defendant to the additional defendants, the trial court properly held that title to the pigs remained in plaintiff, that plaintiff was entitled to follow the proceeds of the sale of the pigs, and that additional defendants were secondarily liable to plaintiff for the value of the pigs disposed of up to the balance of the purchase price due for the pigs.

APPEAL by defendants from *Fountain, Judge.* Judgment entered 25 April 1977 in Superior Court, NASH County. Heard in the Court of Appeals 20 June 1978.

This civil action was instituted by plaintiff to recover certain pigs transferred to defendant Murleen Williams, or $20,301.59, the alleged purchase price of the pigs. In answer to the complaint the defendant Williams admitted that she purchased the pigs from plaintiff and that the draft which she gave plaintiff was returned for insufficient funds. She alleged that the pigs were delivered to defendant Bryan Hargett, that she has not been paid therefor, and that the plaintiff should recover the pigs or the value thereof from defendant Hargett. The defendant Hargett in his answer denied the material allegations of the complaint.

On 1 April 1976 the plaintiff filed a motion seeking to join Trenton Livestock, Inc.; Greenville Livestock, Inc.; and Don C. Flowers, Inc. (hereinafter "Kinston Stock Yard"), as parties defendant and filed an amended complaint alleging that the named corporations were controlled by defendant Hargett; that on or about 19 December 1975 defendant Hargett was in possession of the pigs and was aware that defendant Williams was not the owner of the pigs; and that defendant Hargett sold some of the pigs and applied the proceeds to preexisting debts owed by defendant Williams to the other defendants. The plaintiff renewed its earlier prayer for relief seeking recovery of the pigs or the value thereof.

On 1 April 1976 the plaintiff moved for summary judgment against defendants Williams and Hargett. A hearing was conducted on the plaintiff's motion and on defendant Hargett's cross-motion for summary judgment. By judgment entered 4 May 1976 the court allowed the plaintiff's motion as to the defendant Williams in the amount of $20,301.59, denied the plaintiff's motion as to defendant Hargett and denied the defendant Hargett's cross-motion. No appeal was taken by defendant Williams.

At trial without a jury each party presented evidence. On 25 April 1977 the trial judge made findings of fact which are summarized and quoted as follows:

On 10 December 1975 defendant Williams, a small independent pig buyer, bought 357 pigs from the plaintiff. The plaintiff,

upon defendant Williams' request, drew a draft on her bank account in the amount of $20,301.59 with the understanding that title to the pigs would remain in the plaintiff until the draft was paid. The draft which was immediately presented for payment was returned to the plaintiff for insufficient funds. As of this date no portion of the purchase price has been paid to the plaintiff. At the time of the transaction plaintiff believed the draft would be paid while the defendant Williams was aware that she did not have sufficient funds to cover the draft. When the plaintiff was informed that the draft would not be paid, it "proceeded diligently with efforts to either collect the draft, or to locate and recover its pigs."

In December of 1975 defendant Hargett owned 98% of the stock of defendant Trenton Livestock, Inc.; 94% of the stock of defendant Greenville Livestock, Inc.; and 94% of the stock of Kinston Stock Yard. The remaining stock of these corporations was owned by members of defendant Hargett's family. Defendant Hargett is the president and managing officer of each of the three companies. At the time of the transaction defendant Williams was indebted to defendant Hargett and Trenton Livestock, Inc. in the amount of $22,000; she was also indebted to the other companies in an undetermined amount.

Defendant Hargett, acting under the authority of defendant Williams, picked up the pigs from the plaintiff and transported them to his farm. There he mixed the pigs with others previously purchased by defendant Williams. Within a few days after he brought the pigs to his farm, defendant Hargett was informed that defendant Williams had not paid plaintiff and would not be able to do so, and that plaintiff was seeking recovery of the purchase price or the pigs.

9. Sometime around December 19 or 23, 1975 and after the defendant, Hargett, knew that plaintiff was unpaid for the December 10, 1975, group of pigs and that plaintiff was looking for these pigs, the defendant, Hargett, agreed with the defendant, Mrs. Williams, that he would thereafter dispose of these pigs that were in his lot (consisting primarily of the 357 pigs purchased from plaintiff on December 10, 1975) and that he would use the proceeds of the sale of the pigs to reimburse the corporate defendants for the alleged preexisting debts owed these corporations by defendant, Mrs.

Williams. Beginning with December 29, 1975, and thereafter into April 1976, the defendant, Hargett, acting on behalf of his principal, Mrs. Williams, caused these pigs to be sold; he further endorsed the checks that were made payable to Mrs. Williams to be honored in her name by employees of the corporate defendants; and he caused the proceeds of these checks to be applied to the payment of alleged preexisting indebtedness owed by the defendant, Mrs. Williams, to the defendants, Trenton Livestock, Inc., Greenville Livestock, Inc. and Don C. Flowers, Inc. (Kinston Stock Yard). Altogether, the total amount of payments received from the sale of these pigs which were credited by the corporate defendants against alleged preexisting debts owed by Mrs. Williams were as follows:

| | |
|---|---|
| Trenton Livestock, Inc. | $30,480.02 |
| Greenville Livestock, Inc. | 5,981.09 |
| Don C. Flowers, Inc. (Kinston Stock Yard) | 23,859.04 |

10. The pigs purchased by the defendants [sic], Mrs. Williams, from the plaintiff on December 10, 1975, as set out above, were not purchased from Mrs. Williams by any or all of the remaining defendants; rather, the defendants, Bryan Hargett, Trenton Livestock, Inc. and Greenville Livestock, Inc. purported to act as the agent of Murleen Williams in selling these pigs to third parties and then taking the proceeds from such sales which were in the name of Murleen Williams and applying such proceeds to the payment of alleged preexisting debts, as set out above.

The plaintiff has heretofore obtained judgment against defendant Williams in the amount of $20,301.59 plus interest; however, this judgment has not been satisfied. The defendants Hargett, Trenton Livestock, and Kinston Stock Yard are secondarily liable to the plaintiff to the extent of $20,301.59, and defendant Greenville Livestock is liable to the extent of $5,981.09.

Based on these findings the trial judge made the following conclusions of law:

A. A cash sale is one in which the title to the property and the purchase price pass simultaneously, and the title re-

mains in the seller until the purchase price is paid, even though possession of the property is delivered to the buyer. And where the seller draws a draft upon the buyer as the means of payment and delivers possession to the buyer in the belief that the draft is good and will be paid on presentation, no title whatever passes from the seller to the buyer until the draft is paid, and the seller may reclaim the chattel from the buyer in case the draft is not paid on due presentation.

B. Where a buyer obtains the possession of chattels in a cash sale by inducing the seller to draft the buyer's bank for the purchase price (the buyer knowing that he has insufficient funds in said bank), and the buyer thereafter causes such chattels to be sold, the seller is entitled to follow the proceeds of the sale.

C. Where an agent is aware that its principal has wrongfully acquired possesion of the property of another in a cash sale by causing a draft to be drawn for the purchase price which would be dishonored upon presentment; and where the agent is further aware that its principal cannot pay the purchase price; and the agent thereafter causes such chattels to be sold on the account of its principal and the agent converts the proceeds of such sales to the payment of alleged preexisting debts owed by the principal to the agent, the agent is liable to the true owner to the extent of the value of such chattels so disposed of by the agent (up to the balance of the purchase price due the true owner).

The court then ordered that the plaintiff recover "of the defendants altogether" $20,301.59 with the qualification that recovery against Greenville Livestock be limited to $5,981.09; and that judgment should be executed against defendants Hargett, Trenton Livestock, Greenville Livestock, and Kinston Stock Yard only after execution of judgment against defendant Williams has been returned unsatisfied, and if partially satisfied, then "execution shall only issue as to the balance remaining unpaid."

The defendants Hargett, Trenton Livestock, Greenville Livestock, and Kinston Stock Yard appealed.

*Battle, Winslow, Scott & Wiley, by J. B. Scott, for the plaintiff appellee.*

*Brock & Foy, by Donald P. Brock, for the defendant appellants.*

HEDRICK, Judge.

By their third, fifth, sixth, and eighth assignments of error the defendants challenge the trial judge's findings of fact numbers three, seven, nine, and twelve. These assignments raise the question of whether there is any competent evidence to support the facts found. *Gaston-Lincoln Transit, Inc. v. Maryland Casualty Co.*, 285 N.C. 541, 206 S.E. 2d 155 (1974). After careful examination we conclude that each finding is amply supported by the evidence in the record. No useful purpose would be served by further elaboration thereon.

The defendants' remaining assignments of error challenge the trial court's Finding of Fact Number Ten and all conclusions of law. Under these assignments the defendants apparently do not question the law as reflected in the conclusions. Instead, they devote their entire discussion to their contention that by accepting the pigs in satisfaction of preexisting debts the corporate defendants were good faith purchasers for value from defendant Williams and, as such, were protected from liability when they eventually disposed of the pigs. *See* G.S. 25-2-403; *Stratton Sale Barn, Inc. v. Reed,* 6 U.C.C. Rep. Serv. 922 (1969). Thus, we are faced with the question of whether the evidence supports the trial judge's finding that the pigs sold to defendant Williams by the plaintiff "were not *purchased* from Mrs. Williams by any or all of the remaining defendants" (emphasis added), but that the defendants acted as her agent in selling the pigs to third parties and applying the proceeds to preexisting debts. We think the evidence is overwhelming in its support of this finding.

"Agency" exists when one person is authorized to represent and act for another in dealings with third parties. *Julian v. Lawton,* 240 N.C. 436, 82 S.E. 2d 210 (1954). The defendant Williams testified that she was aware that title to the pigs would not pass to her until her draft was paid; and that she and defendant Hargett had entered into an agreement whereby he would sell the pigs for her, satisfy a personal debt from the proceeds of

the sale, and return the balance to defendant Williams with which she would pay to the plaintiff the purchase price of the pigs. Defendant Williams further testified that defendant Hargett was not authorized to apply the proceeds from the sale of the pigs to debts owed by defendant Williams to the corporate defendants. The defendant Hargett testified that in selling the pigs and in applying the proceeds to the preexisting debts he was acting according to the instructions of defendant Williams and, therefore, under her authority. In fact, all of the evidence depicts an arrangement whereby defendant Williams and defendant Hargett were transacting business in their respective roles of principal and agent. The defendants have cited no convincing evidence to the contrary.

Since the defendants do not seriously challenge the trial court's conclusions of law we deem it unnecessary to discuss them at length. We find each conclusion to be an accurate representation of the law of this State, *see Homes, Inc. v. Bryson,* 273 N.C. 84, 159 S.E. 2d 329 (1968); and, in our opinion, the application thereof was warranted by the trial court's findings of fact, particularly Finding Number Ten. Accordingly, these assignments of error are overruled, and the judgment appealed from is affirmed.

Affirmed.

Judges PARKER and MITCHELL concur.