N. H. GODWIN, TRUSTEE FOR ANGIER AVENUE BAPTIST CHURCH; AS-
BURY METHODIST CHURCH, MRS. MILLIE R. AUSTIN, MRS.
ERNESTINE JOHNSON FARESMAN, WILLIAM GILES, GEORGE
FARESMAN, DR. R. G. FLEMING, LOLA LEE JOHNSON FOUSHEE,
LOIS JOHNSON SILLS, WILLIAM R. AUSTIN JOHNSON AND ESSIE
LENORA GRIFFIN STEVENSON v. WACHOVIA BANK & TRUST
COMPANY, EXECUTOR UNDER THE PURPORTED LAST WILL AND TESTAMENT
OF FRANK C. GRIFFIN, DECEASED; CHARLIE C. GRIFFIN AND ESSIE
LENORA GRIFFIN STEVENSON.

(Filed 14 June 1963.)

**1. Principal and Agent § 3—**

A power of attorney to sell specified realty which stipulates that the
agent should be the principals' attorney in fact irrevocably and forever, is
not an agency coupled with an interest and is terminated by the death of
the principals.

**2. Wills § 6.1—**

Husband and wife executed a trust agreement and on the same day
executed reciprocal wills devising and bequeathing the property of each
respectively to the trustee to be disposed of as provided in the trust
agreement. *Held:* The wills incorporate the trust agreement by reference
so that the trust agreement takes effect as a part of each will respectively,
even though the trust agreement itself be void bcause not executed in
conformity with G.S. 52-12.

**3. Wills § 7—**

Husband and wife executed a trust agreement and then executed their
respective reciprocal wills incorporating the trust agreement and dis-
posing of property held by the entireties and personalty owned respective-
ly by each. After the wife's death, the husband executed another will
making a different disposition of the property. *Held:* It being apparent
that the respective wills were executed pursuant to an agreement entered
into by the husband and wife, their mutual agreement is sufficient con-
sideration to bind them, and equity will impress a trust on the estate of
the husband in order to enforce the agreement and prevent him from de-
feating his obligation.

**4. Evidence § 11—**

If a witness is a party to or is pecuniarily interested in the event of an
action against the personal representative of a deceased or against a per-
son deriving title or interest through such deceased, he is incompetent to
testify in his own behalf as to a personal transaction or communication
with the deceased. G.S. 8-51.

**5. Same—**

In an action by a trustee against the personal representative of one
of the settlors to recover possession of the *res* of the trust, testimony
of the trustee in regard to instructions given him by the settlor for the
preparation of the instruments in suit is incompetent.

6. **Costs § 3—**

The taxing and apportionment of costs and the fixing of reasonable attorney fees in apposite instances rests in the sound discretion of the trial court, G.S. 6-21(2), and in such instance it is error for the court to rule as a matter of law that the request for allowance of attorney fees should be denied.

APPEAL by plaintiff from *McKinnon, J.,* Regular November Civil Term 1962 of DURHAM.

This is a civil action, instituted on 26 June 1959 by N. H. Godwin, as Trustee of a purported trust agreement executed by Frank C. Griffin and his wife, Nell J. Griffin, and N. H. Godwin, Trustee, on 13 October 1956, against the Wachovia Bank and Trust Company, executor of the last will and testament of Frank C. Griffin, deceased, and Charlie C. Griffin and Mrs. Essie Lenora Griffin Stevenson, brother and sister of the late Frank C. Griffin. In this action the plaintiff seeks in the alternative (a) specific performance of an alleged contract between Nell J. Griffin and her husband, Frank C. Griffin, whereby it is alleged each entered into a contract with the other that his or her property would be distributed in accordance with separate wills dated 13 October 1956; or (b) that the defendants be declared constructive trustees for the plaintiff N. H. Godwin, as Trustee, of all the property owned by Frank C. Griffin, deceased, on the date of his death on 7 April 1959.

On 9 October 1956, Frank C. Griffin and his wife, Nell J. Griffin, executed a power of attorney to N. H. Godwin, which, among other things, authorized the said N. H. Godwin "To sell and convey all or any part of our real estate located in Durham County, State of North Carolina, known and designated as house and lot at 1115 Miami Boulevard, Durham, North Carolina, one vacant lot at 1113 Miami Boulevard, Durham, North Carolina, one duplex house and lot located at 1831 Liberty Street, Durham, North Carolina, and house and lot located at 1858 Newton Road, Durham, North Carolina, the descriptions of the above four tracts or lots are more particularly described in deeds recorded in the Durham County Register of Deeds Office, wherein we as husband and wife are named as grantees, either jointly, individually, or by the entirety. * * *

"Our said attorney in fact may execute in our names and stead by himself as attorney in fact deeds in fee simple and general warranty of title that we have in said real estate. This Power of Attorney shall include any and all personal property that we or either of us own including any automobile and the restaurant equipment located at 1104 Broad Street, Durham, North Carolina.

"We now declare, constitute, appoint N. H. Godwin, attorney, our attorney in fact and in our stead irrevocably and forever, and we do hereby ratify and confirm all things so done by our said attorney in fact as fully and to the same extent as if by us personally done and performed."

In the trial of this action the plaintiff did not offer any evidence that Mr. Godwin ever exercised any powers under and pursuant to the aforesaid power of attorney.

On 13 October 1956, Frank C. Griffin and his wife, Nell J. Griffin, and N. H. Godwin, Trustee, executed a purported trust agreement, the pertinent parts of which are as follows:

"That whereas, the Settlors have heretofore given the Trustee power of attorney to sell real estate (belonging to them individually, jointly, or as tenants by the entirety); and whereas Trustee is to dispose of said real estate as hereinafter provided; and whereas, the Settlors have this day delivered to Trustee the sum of .... . . .......... .. ... Dollars in savings account, or cash.

## ARTICLE I

"NOW, THEREFORE, in consideration of the premises set forth above and in consideration of the mutual promises and mutual covenants as herein expressed, and in consideration of One Dollar ($1.00) paid to Settlors by Trustee, the receipt of which Settlors hereby acknowledge; the Settlors have and do hereby convey, deliver, assign and transfer to the Trustee, the sum of ........... ....... . Dollars, together with all investments, re-investments, proceeds from same, income from same, and such other sums of cash money, and/or other securities, and/or other properties of every sort, kind or description, both real and personal, which may be added to the principal sum from time to time by the Settlors or either of them or their executor, shall be held in Trust by the Trustee, his successors, transferees, assigns, upon the terms and conditions as herein expressly provided.

"A. The Trustee shall retain the duplex house designated as 1115 Miami Blvd., Durham, North Carolina, for and during the natural lives of Settlors and Settlors shall occupy and/or receive the rents and profits from the said duplex house for and during their natural lives. At the death of the surviving Settlor, the Trustee shall permit Gattis W. Johnson, brother of Settlor, Nell J. Griffin, to occupy one side of duplex house at 1115 Miami Blvd., Durham, N. C., for and during his natural life, rent free, and then dispose of said duplex house as herein provided."

Paragraphs B and C authorize the Trustee to sell all the remaining real estate referred to in the trust agreement and directs that the pro-

ceeds received from the sales of real estate shall be disposed of as provided in the agreement.

Paragraph D provides that all personal property of the settlors coming into the hands of the Trustee shall likewise be disposed of as provided in the agreement.

## ARTICLE II

"The purpose of this Trust is to provide for the safekeeping of the income and corpus of this trust and to provide for the health, care, welfare of Settlors during their natural lives, and to provide a residence for Gattis W. Johnson, brother of Settlor, Nell J. Griffin, during his natural life.

"A. At the death of either Settlor, the surviving Settlor shall give the deceased Settlor a Christian funeral and shall not be limited in the expenses thereof, except that the Trustee shall determine that the corpus of this Trust shall not be unreasonably depleted thereby and the Trustee shall pay out of the corpus and income of this Trust reasonable funeral expenses for both Settlors."

Paragraphs B, C and D direct the disposition of certain items of personal property to designated persons upon the death of Nell J. Griffin.

Paragraphs E, F and G direct the disposition of certain items of personal property to designated persons upon the death of Frank C. Griffin.

"H. At the death of the surviving Settlor, after all funeral expenses, taxes, and all other expenses have been paid, the remaining corpus of this Trust, except duplex house at 1115 Miami Blvd., Durham North Carolina, shall be disposed of as follows:

"1. One-fifth of the remaining funds in the Trust shall be held in the Trust for the use and benefit of Lola Lee Johnson Foushee, or her children, if she be dead, and shall be disbursed by the Trustee at $40.00 per month.

"2. One-fifth of the remaining funds in the Trust shall be held in the Trust for the use and benefit of Lois Johnson Sills and shall be disbursed by the Trustee at $40.00 per month.

"3. One-fifth of the remaining funds in the Trust shall go to Willie R. Austin Johnson at the death of the surviving Settlor, in fee simple.

"4. One-fifth of the remaining funds in the Trust shall go to Essie Lenora Griffin Stevenson, sister of Settlor, Frank C. Griffin, at the death of the surviving Settlor, in fee simple.

"5. One-fifth of the remaining funds in the Trust shall be equally divided between Angier Avenue Baptist Church, Durham, North Carolina, and Asbury Methodist Church, Durham, North Carolina, for general church purposes by the Board of Trustees of said churches.

## ARTICLE III

"This Trust is to continue as herein provided and shall terminate after the death of Gattis W. Johnson and at the termination of the subsidiary Trusts, as provided for herein.

## ARTICLE IV

"At the death of Gattis W. Johnson, the Trustee is to sell the duplex house and lot at 1115 Miami Blvd., Durham, North Carolina, and divide the proceeds as provided in Article Two above."

Articles V, VI, VII and VIII deal with the powers purportedly granted to the Trustee.

## ARTICLE IX

"The Settlors declare that they are fully advertent to the legal effect of the execution of this agreement, and that they have given consideration to the question whether this Trust indenture shall be revocable or irrevocable, and that they now declare it shall be irrevocable forever, except that they may hereafter bring other funds or properties within the operation of this agreement, to provide for the Settlors during their natural lives."

The foregoing instrument was executed by the Griffins and by N. H. Godwin, as Trustee. Its execution was acknowledged before a notary public. It was not acknowledged, nor was the separate examination of Mrs. Griffin taken, in compliance with the requirements of G.S. 52-12.

There is no evidence tending to show that the Trustee received any personal property from either of the settlors during their joint lives, or that the Trustee ever exercised any control over the property, real or personal, of the settlors until after the death of Nell J. Griffin.

On the same day the trust agreement was executed, each of the Griffins executed a last will and testament. The wills were identical except for the names of the makers thereof. After making provision for the payment of debts and funeral expenses, each will disposed of their respective estates as follows: "I hereby will, devise, bequeath all my property of every sort, kind, description to N. H. Godwin, Attorney, as Trustee, to be disposed of as provided in a Trust Agreement executed by me and my beloved husband, Frank C. Griffin." (Frank C. Griffin's will was identical except that it read "to be disposed of as

provided in a Trust Agreement executed by me and my beloved wife, Nell J. Griffin.")

The plaintiff offered evidence tending to show that the Griffins operated a restaurant in Durham, North Carolina, for many years; that Mrs. Griffin worked in the restaurant and managed its business affairs, while Mr. Griffin worked in the kitchen and supervised the preparation of food. In October 1956 Mrs. Griffin was bedridden at her home with cancer. The Griffins employed a Durham attorney, N. H. Godwin, to prepare their wills and the other instruments referred to herein, all four of which were introduced in evidence by the plaintiff.

According to the allegations of the complaint, at the time of the death of Nell J. Griffin she was the beneficial owner as tenant by the entirety with her husband, Frank C. Griffin, of real estate of an approximate value of $36,000, and was the owner of personal property of an approximate value of $3,200.

Nell J. Griffin died on 4 November 1956. Her will, dated 13 October 1956, was admitted to probate and administered under its terms, including the terms of the trust agreement.

On 8 April 1958, Frank C. Griffin executed a new will revoking his will of 13 October 1956 and bequeathing and devising all his property to his brother, Charles C. Griffin, and his sister, Essie Lenora Griffin Stevenson.

Frank C. Griffin died on 7 April 1959. His will of 8 April 1958 was admitted to probate and the Wachovia Bank and Trust Company has qualified as executor.

At the close of plaintiff's evidence the court sustained defendants' motion for judgment as of nonsuit.

The plaintiff appeals, assigning error.

*Bryant, Lipton, Bryant & Battle for plaintiff appellant.*
*Spears, Spears & Barnes for defendant appellees.*

DENNY, C.J. It is universally recognized in this country that a power of attorney, unless coupled with an interest, is terminated by the death of the principal. The power of attorney involved in this case was not coupled with an interest and was revoked upon the death of Nell J. Griffin. *Fisher v. Trust Co.*, 138 N.C. 90, 50 S.E. 592; *Bank v. Grove*, 202 N.C. 143, 162 S.E. 204; *Dowling v. Winters*, 208 N.C. 521, 181 S.E. 751; *Julian v. Lawton*, 240 N.C. 436, 82 S.E. 2d 210.

The execution of the trust agreement under consideration was not acknowledged as required by G.S. 52-12. Even so, Chapter 1178 of the 1957 Session Laws of North Carolina purports to cure this defect. The

Act, which became effective 10 June 1957, provides: "Any contract between husband and wife coming within the provisions of G.S. 52-12 executed between July 1, 1955 and the effective date of this Section which does not comply with the requirement of a private examination of the wife and which is in all other respects regular is hereby validated and confirmed to the same extent as if the examination of the wife had been separate and apart from the husband."

Our decisions have been to the effect that an attempted conveyance by a wife to the husband, directly or indirectly, without the private examination and certificate as required by G.S. 52-12, is absolutely void. *Foster v. Williams,* 182 N.C. 632, 109 S.E. 834; *Ingram v. Easley,* 227 N.C. 442, 42 S.E. 2d 624, and cases cited therein; *Honeycutt v. Bank,* 242 N.C. 734, 89 S.E. 2d 598; *Davis v. Vaughn,* 243 N.C. 486, 91 S.E. 2d 165.

We have also expressed doubt as to whether or not such defective acknowledgment could be rendered valid by a subsequently passed statute. *Foster v. Williams, supra.* Be that as it may, conceding but not deciding that this trust agreement was void as an *inter vivos* or active trust during the lifetime of the Griffins, such agreement was incorporated in the respective wills of the Griffins by reference and made an integral part thereof as effectively, in our opinion, as if the trust agreement had been set out in full in each of the Griffins' wills.

In the case of *Watson v. Hinson,* 162 N.C. 72, 77 S.E. 1089, Hoke, J., speaking for the Court said: "It is well recognized in this State that a will, properly executed, may so refer to another unattested will or other written paper or document as to incorporate the defective instrument and make the same a part of the perfect will, the conditions being that the paper referred to shall be in existence at the time the second will be executed, and the reference to it shall be in terms so clear and distinct that from a perusal of the second will, or with the aid of parol or other proper testimony, full assurance is given that the identity of the extrinsic paper has been correctly ascertained. The principle is sometimes referred to as 'The doctrine of incorporation by reference,' and is very well stated by Chief Justice Gray in *Newton v. Seaman's Friend Society,* 130 Mass. 91, as follows: 'If a will, executed and witnessed as required by statute, incorporates in itself by reference any document or paper not so executed and witnessed, whether the paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper referred to, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will, and should be admitted to probate as such.'

While there are some discrepancies in the application of the principle to the facts of the different cases, this statement is in accord with the great weight of authority here and in other jurisdictions in this country and in England, where the subject has been very much considered."

In 94 C.J.S., Wills, section 163, page 952, *et seq.*, it is said: "The doctrine of incorporation by reference, as applied to wills, is followed in many jurisdictions. Under this doctrine, and subject to certain conditions and limitations, a properly executed will incorporates in itself by reference any document or paper not so executed, so as to take effect as part of the will, whether such document or paper be in the form of a will, codicil, contract, deed, or other written form of conveyance of realty, mere list, schedule, or memorandum. If the document is incorporated by reference it makes no difference whether or not the document of itself was valid at law."

In *Montgomery v. Blankenship*, 217 Ark. 357, 230 S.W. 2d 51, 21 A.L.R. 2d 212, the Court said: "As stated in 1 Page on Wills (Lifetime Ed.), Sec. 266, p. 522: 'If incorporated by reference it makes no difference whether the original document of itself was valid at law or not. A deed invalid because it never was delivered, may be in corporated in a will. A prior defectively executed will, or the will of another person, or a part of the will of another person, may thus be incorporated. * * * The incorporated document may be treated as part of the will for the purpose of ascertaining the beneficiaries and the share to be given to each.' "

In the case of *Fifth Third Union Trust Co. v. Wilensky*, 79 Ohio App. 73, 70 N.E. 2d 920, the Court said: "A deed, a contract, or any other instrument may be incorporated in a will by reference, and its terms employed as testamentary clauses, although such instrument may have lost its force as to the peculiar original purpose of the document."

Likewise, in *In re Sciutti's Estate*, 371 Pa. 536, 92 A. 2d 188, it was held that "an extrinsic writing, having no validity in itself as a will, nevertheless may be incorporated by reference as part of a valid will."

In the case of *Clark v. Citizens National Bank of Collingswood*, 38 N.J. Super. 69, 118 A. 2d 108, the Court held, contrary to the above views, to the effect that where no valid trust existed, the trust instrument could not be incorporated by reference in a will. However, this seems to be the minority view.

The evidence in this case is to the effect that the Griffins first executed the trust agreement on 13 October 1956 and then immediately thereafter executed their respective wills.

Furthermore, the Griffins were not responsible for the failure of their attorney to have the trust agreement properly executed in accordance

with the provisions of G.S. 52-12. Even so, as stated in *Lawrence v. Ashba,* 115 Ind. App. 485, 59 N.E. 2d 568, "it is apparent however that their minds did meet on a particular testamentary disposition of the property to accomplish a particular purpose, and that they intended the wills made pursuant thereto to remain unrevoked at their death. The mutual agreement of the makers of the wills was sufficient consideration to bind the promisors. Equity will enforce such an agreement when well and fairly founded, and will not suffer one of the contracting parties to defraud and defeat his obligation, but will fasten a trust upon the property involved. *Plemmons v. Pemberton, supra* (1940, 346 Mo. 45, 139 S.W. 2d 910); *Sample v. Butler University,* 1937, 211 Ind. 122, 4 N.E. 2d 545, 5 N.E. 2d 888, 108 A.L.R. 857; *Brown v. Johanson,* 1921, 69 Colo. 400, 194 P 943; 69 C.J., p. 1302, section 2725."

The appellant assigns as error the refusal of the court below to permit the plaintiff to testify regarding the instructions given him by the Griffins in connection with the preparation of the power of attorney, the trust agreement, and the wills involved herein, as well as to conversations with the Griffins in respect thereto. This evidence was excluded by reason of the provisions of G.S. 8-51.

The testimony of a witness is incompetent under the provisions of the above statute when it appears (1) that such witness is a party, or interested in the event, (2) that his testimony relates to a personal transaction or communication with the deceased person, (3) that the action is against the personal representative of the deceased or a person deriving title or interest from, through or under the deceased, and (4) that the witness is testifying in his own behalf or interest. *Collins v. Covert,* 246 N.C. 303, 98 S.E. 2d 26; *Sanderson v. Paul,* 235 N.C. 56, 69 S.E. 2d 156; *Peek v. Shook,* 233 N.C. 259, 63 S.E. 2d 542; *Bunn v. Todd,* 107 N.C. 266, 11 S.E. 1043.

Since the plaintiff is a party to this action, this assignment of error must be overruled.

It is stated in Anno. — Joint, Mutual, and Reciprocal Wills, 169 A.L.R., page 22: "The general rule is that a will jointly executed by two persons, being in effect the separate will of each of them, is revocable at any time by either one of them, at least where there is no contract that the joint will shall remain in effect," citing *Ginn v. Edmundson,* 173 N.C. 85, 91 S.E. 696. See also *Walston v. College,* 258 N.C. 130, 128 S.E 134

In *Ginn v. Edmundson, supra,* where a husband and wife made a joint will disposing of property held as tenants by the entireties, it was held that the survivor could revoke the will at pleasure and take the

property free of the will. The Court said: "A joint or conjoint will is a testamentary instrument executed by two or more persons, in pursuance of a common intention, for the purpose of disposing of their several interests in property owned by them in common, or of their separate property treated as a common fund, to a third person or persons, and a mutual or reciprocal will is one in which two or more persons make mutual or reciprocal provisions in favor of each other. " * * * (I)n the absence of contract based upon consideration, such wills may be revoked at pleasure. * * *"

In the case of *In re Davis' Will*, 120 N.C. 9, 26 S.E. 636, 38 L.R.A. 289, 58 Am. St. Rep. 771, which involved what purported to be a joint will, this Court said: "There is nothing from which it can be implied even that there was any agreement that if one should devise to these devisees the other would do so, or that if one should afterwards revoke, the other would do so. Either had the right to do so, and without notice to the other. It is not like the case of a mutual will, in which after the husband's death, by which event the wife's estate was much increased, she makes another will and diverts the husband's property from the course intended and agreed upon by them at the execution of the joint will. In such case the probate court was unable to control and prevent the wrong, but a court of equity takes hold on the ground of preventing a fraud."

It is equally well settled that where a husband and wife make an agreement for the disposition of their respective estates, in a particular manner, and execute either a joint will or separate wills providing for the disposition of their estates in accordance with the agreement, such agreement may be upheld by specific performance. *Turner v. Thiess*, W.Va., 38 S.E. 2d 369; *Underwood v. Myer*, 107 W.Va. 57, 146 S.E. 896; *Deseumeur v. Rondel*, 76 N.J. Eq. 394, 74 A. 703; *Ohms v. Church of the Nazarene*, Weiser, Idaho, 64 Idaho 262, 130 P 2d 679; 57 Am. Jur., Wills, Section 718, page 488, *et seq.*; 97 C.J.S., Wills, Section 1367, page 307, *et seq.*

In 97 C.J.S., Wills, section 1367 (d), page 305, it is said: "The rights and obligations of the parties to an agreement to make a joint or mutual will are determined by the terms of the agreement; where the intent of the contracting parties is expressed in clear and unambiguous language, the court is relieved of the necessity of resorting to rules of construction, but has the duty to give the contract effect according to its terms. In ascertaining the contract, the situation of the parties and the surrounding circumstances may properly be considered, as in the case of contracts generally; and the contract, or agreement, must be construed in the light of the joint will executed

simultaneously therewith. Where the makers of mutual wills make a contract as to the disposition of property, the court will give effect to the contract as made, rather than attempt construction by implication or insertion by reference."

In *Thompson on Wills* (Second Edition), section 153, page 200, it is said: "As a general rule, a mutual or joint will may be revoked by either of the comakers, provided it was not made in pursuance of a contract. But where such will has been executed in pursuance of a compact or agreement entered into by the testators to devise their separate property to certain designated beneficiaries, subject to a life estate or other interest in the survivor, it is generally held irrevocable when, upon the death of one, the survivor avails himself of the benefits of the devise in his favor.

"In the absence of a valid contract, however, the mere concurrent execution of the will, with full knowledge of its contents by both testators, is not enough to establish a legal obligation to forbear revocation. On the other hand, mutual wills executed in pursuance of a contract are not irrevocable in such sense that one of the makers can not make a subsequent will which will be entitled to probate, although the remedy for breach of such contract may be enforceable in a court of equity. A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other party; but it becomes irrevocable after the death of one of them, if the survivor takes advantage of the provisions made by the other."

In our opinion, when the wills of the Griffins are considered in light of the provisions contained in the trust agreement, which agreement was incorporated by reference in both wills as containing the provisions for the disposition of their respective estates, the wills themselves establish the existence of the contract and the plaintiff is entitled to specific performance for the benefit of the beneficiaries named in the mutual wills, and we so hold.

The appellant assigns as error the refusal of the court below, as a matter of law, to make allowance of attorney fees for his counsel, and in the discretion of the court to tax the costs against the defendant Wachovia Bank & Trust Company.

G.S. 6-21, as amended by Chapter 1364 of the 1955 Session Laws of North Carolina, and codified as G.S. 6-21 (2) in the 1961 Cumulative Supplement, leaves the taxing of court costs and the apportionment thereof to be made in the discretion of the court. Moreover, the fixing of reasonable attorney fees in applicable cases is likewise a matter within the sound discretion of the trial court. *Little v. Trust Co.*, 252 N.C. 229, 113 S.E. 2d 689; *Hoskins v. Hoskins*, post, 704.

We think there was error in ruling as a matter of law that the petition for counsel fees should be denied.

In view of the conclusion we have reached, the appellant's assignment of error to the sustaining of the defendants' motion for judgment as of nonsuit is upheld, and the judgment entered below is

Reversed.