ROBERT M. OLIVE, SR., INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF RUTH SEDBERRY OLIVE, DECEASED v. GEORGE BIGGS; CHRISTINE BIGGS; RUTH OLIVE NEITMAN; CLARENCE SEDBERRY OLIVE; JEAN McKAY OLIVE TOLAR, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT M. OLIVE, JR., DECEASED; ANN M. OLIVE; CARRIE BLACKMAN SIMMONS; MYRA OLIVE; LOWNEY OLIVE; IULA OLIVE AND ROBERT M. OLIVE, III; TERRY DEE OLIVE; HUNTER OLIVE; THERESA OLIVE; WINSTON OLIVE; CARLA NEITMAN; ROBIN NEITMAN; RENEE NEITMAN; DEBRA NEITMAN; KAY OLIVE AND NANCY OLIVE, MINORS

No. 6912SC467

(Filed 22 October 1969)

1. Wills § 73— action to construe will — competency of evidence

In an action to construe a purported will executed jointly by the husband and wife, it was proper to admit the testimony of a witness relating to what knowledge, if any, he may have had of the existence of a contract between the husband and wife which provided that the will was to remain in effect as the will of the surviving spouse at the time of such spouse's death, the testimony being relevant to an issue in the action.

2. Wills §§ 2, 73— joint will of spouses — existence of contract to execute will — findings — action to construe

In an action by a husband, individually and as executor of the estate of his deceased wife, to seek construction of a purported will executed jointly by the husband and the wife, findings and conclusions by the trial court that (1) there was no contract between the husband and wife to execute the joint will and that (2) the purported will itself did not constitute a contract between the spouses so as to require that the will remain in effect as the will of the surviving spouse, held supported by the pleadings, the stipulations, and the evidence.

**3. Wills § 8—   joint or reciprocal wills — revocation**

In the absence of a valid contract, the concurrent execution of a joint, conjoint, or reciprocal will, with full knowledge of its contents by those executing, is not enough to establish a legal obligation to forbear revocation, either before or after the death of a party thereto.

**4. Wills § 73—   action to construe will — conflict between items of will — dominant purpose of testator**

In an action by a husband, individually and as executor of the estate of his wife, to seek construction of a purported will executed jointly by the husband and the wife, item two of the will devised and bequeathed "all of his or her property, unconditionally and in fee simple, to the survivor, in the event that one of us survives the other." The remaining items attempted to devise and bequeath to various beneficiaries the property described in item two in addition to other property owned by the spouses as tenants by the entirety. *Held:* It was the dominant or primary purpose of the testator to devise or bequeath all of her individual property in fee simple to her husband if he should survive her, and, secondarily, to provide for the disposition of her property in the remaining items of the will in the event that the two of them should die simultaneously; consequently, the testator's primary purpose controls and the husband may dispose of the realty devised to him under the will.

**5. Wills § 28—   rule of construction — intention of testator**

In the construction of wills the intention of the testator must prevail, provided it can be effectuated within the limits which the law prescribes.

**6. Wills § 28—   rule of construction — conflict between purposes of testator**

When the primary purpose and a secondary purpose of a testator conflict and are inconsistent with each other, that purpose which is primary will control that which is secondary.

APPEAL by defendant Jean McKay Olive Tolar, Individually and as Executrix of the Estate of Robert M. Olive, Jr., Deceased, from *Canaday, J.,* May 1969 Civil Session of Superior Court held in CUMBERLAND County.

Plaintiff, individually and as executor, instituted this action and filed complaint on 4 March 1968 under the provisions of the Uniform Declaratory Judgment Act. See G.S. 1-253, *et seq.* Plaintiff seeks to obtain a judgment of the court construing the paper writing purporting to be a last will and testament dated 25 February 1965 executed by plaintiff and his deceased wife, Ruth Sedberry Olive (hereinafter referred to as the deceased wife). Plaintiff's wife died 29 September 1965. The paper writing was admitted to probate in common form as the last will and testament of the decedent, Ruth Sedberry Olive. On 20 October 1965 Robert M. Olive, Sr., qualified as executor under the will. The will is as follows:

"NORTH CAROLINA
CUMBERLAND COUNTY

We, Robert M. Olive, Sr. and Ruth Sedberry Olive, husband
and wife, both of Cumberland County, North Carolina, and both
being of sound mind, but considering the uncertainty of our
earthly existence, in consideration of each making this OUR
LAST WILL AND TESTAMENT, do hereby MAKE, PUB-
LISH and DECLARE this instrument to be jointly as well as
severally OUR LAST WILL AND TESTAMENT.

ONE:

We direct our Executors, hereinafter named, to pay all of our
just debts and funeral expenses out of the first money coming
into their hands belonging to our estate.

TWO:

We, and each of us, devise and bequeath all of his or her prop-
erty, unconditionally and in fee simple, to the survivor, in the
event that one of us survives the other.

THREE:

Upon the death of the survivor, or in the event that our death
is simultaneous, we do hereby give and devise our home place,
at No. 126 Dobbin Avenue, in the City of Fayetteville, to our
sons ROBERT M. OLIVE, JR. and CLARENCE S. OLIVE,
and our daughter, RUTH OLIVE NIETMAN.

FOUR:

We give and devise, in fee simple, to our son, ROBERT M.
OLIVE, JR., the white brick and weatherboard constructed
house at No. 209 A DeVane Street, in the City of Fayetteville,
including the household and kitchen furniture therein.

FIVE:

We give, devise and bequeath, in fee simple, subject to the con-
ditions hereinafter set out, to our daughter, RUTH O. NIET-
MAN, our following described property:

1.   The two store brick dwelling at No. 209 DeVane Street, to-
gether with the furniture and furnishings therein, being on the
corner of DeVane and Olive Court, in the City of Fayetteville.

2.   The brick dwelling and the furniture and furnishings therein,

at 209 B on Olive Court leading from DeVane Street eastwardly in the City of Fayetteville.

3. The brick dwelling, and the furniture and furnishings therein, at 209 C on Olive Court leading from DeVane Street Eastwardly in the City of Fayetteville, if, at the time of our death we still own the house and property on East Mountain Drive; but if, at the time of our death we do not own the said property on East Mountain Drive, then the brick dwelling, and the furniture and furnishings therein, at 209 C on Olive Court, shall vest in ROBERT M. OLIVE, JR., as set out in Article SIX of this will.

4. The house and lot on Grove Street, the two houses and lots on Bell Street, and one vacant lot on New York Street, all in the City of Fayetteville.

All of the foregoing described property is devised and bequeathed to our daughter, RUTH O. NIETMAN, subject to the condition and provision that no part thereof may be sold or mortgaged without the consent, in writing, of ALEXANDER E. COOK and LACY S. COLLIER, Fayetteville, North Carolina, or the survivor.

In the event, however, that either ALEXANDER E. COOK or LACY S. COLLIER be not living at the time of the death of the survivor of us, or either declines to serve, or either dies before the estate is fully administered, then, and in any one of said events, we hereby appoint JAMES R. NANCE of Fayetteville, North Carolina, in the place of that one, to serve in this capacity.

### SIX:

We give, devise and bequeath to our son, ROBERT M. OLIVE, JR., our country place located on East Mountain Drive in Pearce's Mill Township, about six miles south of Fayetteville, which country place consists of a concrete and masonry house and two lots, and including the fishing pier in Watson's Pond, and also including the furniture and furnishings in the house.

In the event, however, that at the time of our death we do not own this said property, then we give and devise to our son, ROBERT M. OLIVE, JR., the brick building at 209 C on Olive Court leading from DeVane Street eastwardly, in the City of Fayetteville.

### SEVEN:

We give and devise and bequeath to our son, CLARENCE S. OLIVE, the brick dwelling house, and the furniture and furn-

ishings therein, at No. 209 D. Olive Court in the City of Fay-
etteville.

## EIGHT:

We give and bequeath to our sons, ROBERT M. OLIVE, JR.
and CLARENCE S. OLIVE, to be equally divided between
them, all of the dental office equipment of ROBERT M.
OLIVE, SR.

## NINE:

The diamond solitaire ring of ROBERT M. OLIVE, SR., shall
be sold and the proceeds of the sale divided equally among our
children, ROBERT M. OLIVE, JR., CLARENCE S. OLIVE
and RUTH O. NIETMAN.

## TEN:

Our household furniture and furnishings in our home, and cer-
tain other articles of personal property shall be divided among
our children and the others named in a memorandum and list
that will be found with this will.

## ELEVEN:

We give and bequeath to our faithful and dependable house
servant, CARRIE BLACKMON SIMMONS, the sum of ONE
HUNDRED ($100.00) DOLLARS.

## TWELVE:

All the rest and residue of our estate, meaning thereby all of
our property of any sort, kind and description, both real and
personal, except that described on the list and memorandum
referred to in Paragraph TEN, which remains after all debts
and costs of administration are paid, and all prior provisions of
this will fully complied with and carried out, we will, devise
and bequeath, after the death of the survivor, to our three
children, ROBERT M. OLIVE, JR., CLARENCE S. OLIVE
and RUTH O. NIETMAN, share and share alike.

## THIRTEEN:

We, and each of us, do hereby appoint the survivor of the two
as executor or executrix of this OUR LAST WILL AND TES-
TAMENT; however, after the death of the survivor of the two,
we and each of us do hereby constitute and appoint ALEX-
ANDER E. COOK and LACY S. COLLIER as Executors of

this, OUR LAST WILL AND TESTAMENT, hereby giving and granting unto the said Executors full power to do all things necessary to properly execute this, OUR LAST WILL AND TESTAMENT, according to the true intent and meaning of the same, hereby revoking and declaring utterly void any other wills and testaments by us, or either of heretofore made.

IN THE EVENT, HOWEVER, that either ALEXANDER E. COOK or LACY S. COLLIER be not living at the time of the death of the survivor of us, or either declines to serve, or either dies before the estate is fully administered, then, and in any of said events, we hereby appoint JAMES R. NANCE, of Fayetteville, as co-EXECUTOR, to act in conjunction with the remaining one, with all the duties, power and authority herein given to the originally named Executors.

IN WITNESS WHEREOF, we, and each of us, have hereunto set our hands and seals, this the Feb 25 day of February, 1965."

The instrument was signed by Robert M. Olive, Sr., and Ruth Sedberry Olive and properly attested by three witnesses in the form and manner required by G.S. 31-3.3.

Plaintiff entered into a written contract to convey to defendants George Biggs and Christine Biggs one lot which had been owned by the deceased wife and one lot which had been owned by plaintiff and the deceased wife as tenants by the entireties.

The legatees and devisees under the will, or their representatives, were made parties to this action. Defendant Jean McKay Olive Tolar (Tolar) is the remarried widow of plaintiff's deceased son, Robert M. Olive, Jr., and is the sole beneficiary named in the will of Robert M. Olive, Jr., who died 23 December 1965.

Upon calling the case for hearing, a trial by jury was waived by all the parties.

The parties offered evidence and made stipulations. The court made extensive findings of fact and conclusions of law. From the facts found and conclusions reached, the court ordered, adjudged, decreed and declared:

"(1)  That the plaintiff acquired a fee simple absolute title to the properties of his decedent wife, Ruth Sedberry Olive, under the joint will of February 25th, 1965.

(2)  That there was no contract between the plaintiff and his decedent wife, Ruth Sedberry Olive, to enter into the joint will of February 25th, 1965, nor does said will constitute a contract

between plaintiff and his said wife, Ruth Sedberry Olive, requiring that said joint will remain in effect as the will of the survivor at the time of his death.

(3)    That the plaintiff is under no disability to convey title to the property described in Exhibit 'D' to the defendants, Biggs, by reason of the execution and existence of said joint will of February 25th, 1965."

From this judgment, Tolar appealed to the Court of Appeals.

*McCoy, Weaver, Wiggins, Cleveland & Raper by L. Stacy Weaver, Jr., for plaintiff appellee.*

*Quillin, Russ, Worth & McLeod by Joe McLeod for defendant Jean McKay Olive Tolar, appellant.*

MALLARD, C.J.

[1]    Appellant's first assignment of error is to the admission of certain evidence. The questions and the answers which are assigned as error are as follows:

"Q    Mr. Cook, referring to Plaintiff's Exhibit A, I will ask you if you have any knowledge of any agreement, apart from this suit, that is, apart from the will, itself, between Dr. Olive and his decedent wife, respecting the execution of this will?

A    I have no knowledge of any agreement.

Q    Do you have any knowledge, sir, of any agreement, apart from this Exhibit A, between Dr. Olive and his decedent wife, Mrs. Olive, whereby they may have agreed that this will could not be changed by one without the consent of the other?

A    I know of no such agreement.

Q    Do you have any knowledge, sir, of any agreement between Dr. Olive and his decedent wife, Mrs. Olive, apart from this Exhibit A, whereby each might have undertaken to have kept this exhibit as their only will?

ATTORNEY WORTH:  As what?

ATTORNEY WEAVER:  As their only will.

Objection by Attorney McLeod.

COURT:  Overruled.

Q    You may answer.

A    Any agreement that this would be their only will?

Q    Yes, sir.

A    No agreement, other than what is contained in this will."

All of these questions and answers related to what knowledge, if any, the witness may have had with respect to the existence of a contract between Robert M. Olive, Sr., and his deceased wife. The question of whether there was such a contract in existence was material to the inquiry in this case. The court did not commit error in the admission of such testimony.

[2]    Tolar excepted and assigned as error the finding of fact numbered 10, which reads as follows:

> "That there was no contract, apart from the joint will of February 25th, 1965, which was executed by the plaintiff and his decedent wife, Ruth Sedberry Olive, respecting the execution of the aforesaid joint will, nor any contract between such parties that the aforesaid joint will of February 25th, 1965, could not be changed by one without the consent of the other, or any such contract that the aforesaid joint will of February 25th, 1965, was to be the only will of the plaintiff and his decedent wife, Ruth Sedberry Olive."

In 97 C.J.S., Wills, § 1364, it is said:

> "A conjoint will implies that the testators own the property in common."
>
> *              *              *
>
> "A joint will is a single testamentary instrument constituting or containing the wills of two or more persons, and jointly executed by them."
>
> *              *              *
>
> "A joint will wholly reciprocal in its provisions and providing that the survivor shall succeed, at the death of the maker first to die, to all of the latter's estate is, in effect, only the separate will of the one dying first."
>
> *              *              *
>
> "Mutual wills are the separate wills of two or more persons which are reciprocal in their provisions, or wills executed in pursuance of a compact or agreement between two or more persons to dispose of their property, to each other or to third persons, in a particular mode or manner."
>
> *              *              *
>
> "Reciprocal wills are those in which each of two or more testators makes a testamentary disposition in favor of the other or others."

The will before us is a single instrument, jointly executed, pur-

porting to contain the wills of Robert M. Olive, Sr., and his deceased wife. It thus has some of the characteristics of a joint will.

This will attempts to devise, after the death of the survivor, certain property owned by Robert M. Olive, Sr., and his deceased wife as tenants by entirety. This causes it to contain some of the characteristics of a conjoint will.

Further, the will before us makes a testamentary disposition in favor of the two persons who executed it. It thus has some of the characteristics of a reciprocal will.

Appellant Tolar contends that the court committed error in ruling as a matter of law that the paper writing under consideration in this case did not contain or constitute a contract to enter into such a will or a contract that said will is to remain in effect until the death of the survivor and thereby become the will of the survivor.

In *Godwin v. Trust Co.*, 259 N.C. 520, 131 S.E. 2d 456 (1963), it was held that a trust agreement executed by the husband and wife prior to the execution by them of separate wills was incorporated by reference in the wills. It was also held that the respective wills were executed pursuant to an agreement entered into by the husband and wife and that their mutual agreement was sufficient consideration to bind them and that the trust agreement took effect as a part of each will respectively, even though the trust agreement was void because not executed in conformity with the provisions of G.S. 52-12 as it then was. (Similar provisions are now contained in G.S. 52-6.) The Court said:

> "In our opinion, when the wills of the Griffins are considered in light of the provisions contained in the trust agreement, which agreement was incorporated by reference in both wills as containing the provisions for the disposition of their respective estates, the wills themselves establish the existence of the contract and the plaintiff is entitled to specific performance for the benefit of the beneficiaries named in the mutual wills, and we so hold."

In the case of *Walston v. College*, 258 N.C. 130, 128 S.E. 2d 134 (1962), it is said:

> "It is stated in Anno — Joint, Mutual, or Reciprocal Wills, 169 A.L.R., at page 22, 'The general rule is that a will jointly executed by two persons, being in effect the separate will of each of them, is revocable at any time by either one of them, at least where there is no contract that the joint will shall remain in

effect * * *,' citing *Ginn v. Edmundson,* 173 N.C. 85, 91 S.E. 696.

In *Ginn v. Edmundson, supra,* where a husband and wife made a joint will disposing of property held as tenants by the entireties, it was held that the survivor could revoke the will at pleasure and take the property free of the will. The Court said: 'A joint or conjoint will is a testamentary instrument executed by two or more persons, in pursuance of a common intention, for the purpose of disposing of their several interests in property owned by them in common, or of their separate property treated as a common fund, to a third person or persons, and a mutual or reciprocal will is one in which two or more persons make mutual or reciprocal provisions in favor of each other.

'* * * (I)n the absence of contract based upon consideration, such wills may be revoked at pleasure. * * *

'The will before us belongs to the class of joint or conjoint wills, as it is a disposition of the property owned by the husband and wife by the entireties to third persons, and there is no reason why the wife could not, after the death of her husband, revoke the will and dispose of the property as if it had not been signed by her.'

In *Clements v. Jones,* 166 Ga. 738, 144 S.E. 319, the Court said: 'The general rule is * * * that if two persons executed wills at the same time, either by one or two instruments, making reciprocal dispositions in favor of each other, the mere execution of such wills does not impose such a legal obligation as will prevent revocation. * * * (T)o enable one to invoke the intervention of equity, it is not sufficient that there are wills simultaneously made, and similar in their reciprocal provisions; but the existence of a clear and definite contract must be alleged and proved, either by proof of an express agreement, or by unequivocal circumstances.'

It is said in 97 CJS., Wills, section 1367, page 301: '* * * (T)he agreement, in order to make the wills mutual, and to be enforceable, must be more than a mere agreement to make wills, or to make the wills which in fact are made: it must involve the assumption of an obligation to dispose of the property as therein provided, or not to revoke such wills, which are to remain in force at the death of the testators.' "

[3]    The general rule is that, in the absence of a valid contract, the concurrent execution of a joint, conjoint, or reciprocal will, with

full knowledge of its contents by those executing, is not enough to establish a legal obligation to forbear revocation, either before or after the death of a party thereto. *Godwin v. Trust Co., supra; Walston v. College, supra; In re Davis' Will,* 120 N.C. 9, 26 S.E. 636 (1897) ; 169 A.L.R. 68.

[2] We are of the opinion and so hold that the trial court, in view of the admissions by appellant in the pleadings, together with the stipulations, and the evidence, made appropriate findings based thereon and correctly adjudged that there was no contract between Robert M. Olive, Sr., and his deceased wife relating to making the will in question and that the instrument itself did not constitute a contract between them.

Appellant assigns as error the ruling of the court that plaintiff acquired a fee simple title to the properties of his decedent wife, Ruth Sedberry Olive, under the will dated 25 February 1965.

[4] There is an apparent conflict between the provisions of item two and the provisions of items three through twelve. In item two, the property is given to the survivor in fee simple, and items three through twelve attempt to deal with the same property devised and bequeathed in item two in addition to the property owned by entirety.

The language in item two of the will is clear. It devises and bequeaths "all of his or her property, unconditionally and in fee simple, to the survivor, in the event that one of us survives the other." Robert M. Olive, Sr., became the survivor upon the death of Ruth Sedberry Olive.

The real property described in the will in items three, four, seven, and subparagraphs numbered 1, 2, and 3 in item five, and one of the lots described in item six, were owned by them as tenants by entirety. Ruth Sedberry Olive owned the house and lot on Grove Street described in subparagraph number 4 under item five and one of the lots described in item six. Robert M. Olive, Sr., owned the two houses and lots on Bell Street and one vacant lot on New York Street described in subparagraph number 4 under item five.

[5] "The first great rule in the construction of wills is that the intention of the testator must prevail, provided it can be effectuated within the limits which the law prescribes." *Raines v. Osborne,* 184 N.C. 599, 114 S.E. 849 (1922). In the case of *McCain v. Womble,* 265 N.C. 640, 144 S.E. 2d 857 (1965), the Supreme Court said:

"This Court has repeatedly held that the intent of the testator is the polar star that must guide the courts in the interpretation

of a will. This intent is to be gathered from a consideration of the will from its four corners, and such intent should be given effect *unless contrary to some rule of law* or at variance with public policy."

**[6]** Another general rule is that when the primary purpose and a secondary purpose of a testator conflict and are inconsistent with each other, that which is primary will control that which is secondary. *Moore v. Langston,* 251 N.C. 439, 111 S.E. 2d 627 (1959); *Coffield v. Peele,* 246 N.C. 661, 100 S.E. 2d 45 (1957).

In the case of *Coppedge v. Coppedge,* 234 N.C. 173, 66 S.E. 2d 777 (1951), the Supreme Court said:

"In construing a will, the entire instrument should be considered; clauses apparently repugnant should be reconciled and effect given where possible to every clause or phrase and to every word. 'Every part of a will is to be considered in its construction, and no words ought to be rejected if any meaning can possibly be put upon them. Every string should give its sound,' *Edens v. Williams,* 7 N.C. 27. *Williams v. Rand, supra; Lee v. Lee,* 216 N.C. 349, 4 S.E. 2d 880; *Bell v. Thurston,* 214 N.C. 231, 199 S.E. 93; *Roberts v. Saunders,* 192 N.C. 191, 134 S.E. 451. But, where provisions are inconsistent, it is a general rule in the interpretation of wills, to recognize the general prevailing purpose of the testator and to subordinate the inconsistent provisions found in it."

Appellee contends, and we agree, that to preserve the dominant purpose of the testator, give meaning to all parts of the will and to prevent irreconcilable repugnancies, the dominant purpose of Robert M. Olive, Sr., and his wife, Ruth Sedberry Olive by the language used was: (1) to provide for the survivor; and (2) to provide that if the two of them should die simultaneously, the disposition of all of their property was to be as set out in items three through twelve of the instrument.

Applying the applicable rules to the will under consideration, we are of the opinion and so hold that the dominant or primary purpose of the testator, Ruth Sedberry Olive, was to devise and bequeath all of her individual property in fee simple to her husband, Robert M. Olive, Sr., which she did under item two of the will. No reason has been shown why Robert M. Olive, Sr., could not dispose of the real property devised to him under the will of Ruth Sedberry Olive.

After careful consideration of all of appellant's assignments of

error, we are of the opinion that no prejudicial error is made to appear. The judgment entered by the Superior Court herein is

Affirmed.

MORRIS and HEDRICK, JJ., concur.